460 F.2d 609
 Chesley KARR, a minor, Individually and John R. Karr,
Individually and as next friend and Guardian Ad
Litem on behalf of themselves and all
others similarly situated,
Plaintiffs-Appellees,
v.
Clifford SCHMIDT, Principal of Coronado High School, et al.,
etc., Defendants-Appellants.
 No. 31045.
 United States Court of Appeals,
Fifth Circuit.
 April 28, 1972.
 
 A. R. Grambling, Morris A. Galatzan, Harold L. Sims, El Paso, Tex., for defendants-appellants.
 Ruth Kern, Clarence D. Moyers, El Paso, Tex., for plaintiffs-appellees.
 Before JOHN R. BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM and RONEY, Circuit Judges.
 LEWIS R. MORGAN, Circuit Judge:
 
 
 1
 This is another of the multitude of lawsuits which have recently inundated the federal courts attacking hair length regulations promulgated by local public school authorities.
 
 
 2
 Appellee Chesley Karr is a sixteen-year-old student at Coronado High School in El Paso, Texas. On August 12, 1970, Karr attempted to enroll for his junior year at that school but was not permitted to do so because he was in violation of a school board regulation limiting the length of male students' hair.[1] After several conferences with school board officials proved futile, Karr filed suit in federal court seeking injunctive and declaratory relief.
 
 
 3
 *****
 
 
 4
 * * *
 
 FOR BOYS
 
 5
 *****
 
 
 6
 * * *
 
 
 7
 After a four-day trial, the district court, 320 F.Supp. 728, concluded that the denial of a free public education to Karr on the basis of this regulation violated the due process and equal protection guarantees of the Federal Constitution. The court enjoined school board officials to enroll Chesley Karr and to refrain from enforcing the hair-length regulation.
 
 
 8
 On motion of the school authorities, this court stayed the district court's injunction pending appeal. Karr then petitioned the late Mr. Justice Black in his capacity as Circuit Justice for the Fifth Circuit to vacate the stay of injunction pending appeal. Mr. Justice Black denied the petition, 401 U.S. 1201, 91 S.Ct. 592, 27 L.Ed.2d 797, observing:
 
 
 9
 There is no * * * direct, positive command about local school rules with reference to the length of hair state school students must have. And I cannot now predict this court will hold that the more or less vague terms of either the Due Process or Equal Protection Clauses have robbed the States of their traditionally recognized power to run their school system in accordance with their own best judgment as to the appropriate length of hair for students.
 
 
 10
 ******
 
 
 11
 * * *
 
 
 12
 There can, of course, be honest differences of opinion as to whether any government, state or federal, should as a matter of public policy regulate the length of haircuts, but it would be difficult to prove by reason, logic, or common sense that the federal judiciary is more competent to deal with hair length than are the local school authorities and state legislatures of all our 50 States. Perhaps if the courts will leave the States free to perform their own constitutional duties they will at least be able successfully to regulate the length of hair their public school students can wear.
 
 
 13
 The appeal from the district court's judgment is now before this court on the merits. Believing, as did Mr. Justice Black, that appellee Karr's asserted right to be free of school regulations governing the length of his hair is one that is not cognizable in federal courts, we reverse with direction that the case be dismissed for failure to state a claim for which relief can be granted.
 
 I.
 
 14
 The Fifth Circuit first considered the constitutional validity of hair length regulations in Ferrell v. Dallas Independent School District, 5 Cir., 1968, 392 F.2d 697, cert. den. 393 U.S. 856, 89 S. Ct. 98, 21 L.Ed.2d 125. That case involved a factual context closely paralleling the case at bar. The plaintiffs were high school students barred from school by a hair-length regulation similar to that utilized by Coronado High School in the instant case. In its opinion, this court assumed without deciding that "a hair style is a constitutionally protected mode of expression",[2] but concluded that school authorities might place restrictions upon this "right" if those restrictions served "compelling" state interests. The court held that the interest of the state "in maintaining an effective and efficient school system" was a compelling state interest sufficient to justify the regulation.[3]
 
 
 15
 Since Ferrell, the circuit has considered high school hair and grooming regulations in numerous other cases. In each of those cases, except one, the validity of such regulations was affirmed in this court.[4] In one case, Dawson v. Hillsborough County, Florida School Board, 5 Cir., 1971, 445 F.2d 308, this court affirmed a district court finding that a local school hair regulation was unconstitutional because it was unrelated to legitimate school board objectives.
 
 II.
 
 16
 The district court, relying on Ferrell and the subsequent Fifth Circuit cases, ruled that "one's choice of hair style is constitutionally protected" and that the burden was upon school authorities to demonstrate that long hair resulted in disruption of the educational process. The district court held that:
 
 
 17
 [I]f the school authorities [are] unable to support factually their rule, offering speculation only, the rule is * * * unreasonable and hence in violation of the equal protection and/or due process clauses of the Fourteenth Amendment. * * * "The touchstone for sustaining such regulations is the demonstration that they are necessary to alleviate interference with the educational process." Griffin v. Tatum, 5 Cir., 1970, 425 F. 2d 201, 203.
 
 
 18
 In applying this test, the district court heard evidence from both parties. Witnesses for the defendant school board were three students, two teachers, two student activities directors, three assistant principals, four principals, and the school superintendent. All of these witnesses testified, in substance, that students with long hair caused distraction in the classroom, disciplinary problems, health problems, and safety problems.
 
 
 19
 Plaintiff called 17 witnesses on his behalf. Of these, three were members of the Karr family, and nine were students either at Coronado High or at other schools in the El Paso area. In the main, the students testified that they did not believe that long hair caused disciplinary problems, other than the problems created when attempts were made to enforce the hair length regulation. Several students did, however, acknowledge that they had witnessed or heard of fights between long and short-haired students. Also called was a former teacher who had taught high school in Austin, Texas, and in Oklahoma, who testified that she saw no rational basis for a hair-cut code. Finally, the plaintiff called three, "expert" witnesses-a psychologist, a college English teacher, and a college political science teacher. The essence of this "expert" testimony was that there is no correlation between hair length and conduct; that hair regulations may alienate students from school authorities; and that the regulations may adversely affect the parent-child relationship.
 
 
 20
 After hearing this conflicting evidence, the district court made findings of "fact". It concluded that "the over-whelming preponderance of the relevant, credible evidence indicates * * * that the presence and enforcement of the hair-cut rule causes far more disruption of the classroom instructional process than the hair it seeks to prohibit". The court then discussed each of the separate justifications proffered by the Texas school authorities. The court concluded that the contention of school authorities that long hair could be prohibited because it is difficult to keep clean was invalid because the length of hair is unrelated to "habits of personal hygiene one develops through parental training * * *". The court held that a preponderance of the evidence supported the finding that long hair does not create a safety hazard in science laboratories. With regard to discipline, the court held that disciplinary problems were created not by the presence of long-haired students but by efforts to enforce the long-hair regulation. With respect to the undisputed testimony that fights had occurred between long and short-haired students, the court ruled that the proper course of action for the school board was to "[teach] tolerance" rather than banning long hair. Having found, as a matter of fact, that there was no reasonable relationship between the regulation and legitimate school board objectives, the court concluded as a matter of law that the regulation violated the Due Process and Equal Protection clauses of the Federal Constitution.
 
 III.
 
 21
 In view of the district court's holding that the school board failed to sustain its burden of justification, this court is now called upon to decide the question which it reserved in Ferrell: Is there a constitutionally protected right to wear one's hair in a public high school in the length and style that suits the wearer? We hold that no such right is to be found within the plain meaning of the Constitution.
 
 
 22
 It has been argued that the First, Eighth, Ninth, Tenth, and Fourteenth Amendments and the penumbras therefrom supply a basis in the Constitution for such a right. We reject each of these theories; nevertheless, we shall consider each of them.
 
 
 23
 A. The First Amendment.-The most frequently asserted basis for a constitutional right to wear long hair lies in the First Amendment.[5] It is argued that the wearing of long hair is symbolic speech by which the wearer conveys his individuality, his rejection of conventional values, and the like. Accordingly, it is argued that the wearing of hair is subject to the protection of the First Amendment under the principles announced in Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).
 
 
 24
 We find considerable difficulty, however, with the First Amendment approach to this question. First, we think it doubtful that the wearing of long hair has sufficient communicative content to entitle it to the protection of the First Amendment. As the Supreme Court said in United States v. O'Brien, 391 U. S. 367, 376, 88 S.Ct. 1673, 1678, 20 L. Ed.2d 672:
 
 
 25
 We cannot accept the view that an apparently limitless variety of conduct can be labeled "speech" whenever the person engaging in the conduct intends thereby to express an idea.
 
 
 26
 For some, no doubt, the wearing of long hair is intended to convey a discrete message to the world. But for many, the wearing of long hair is simply a matter of personal taste or the result of peer group influence.[6] Appellee Karr, for example, has brought this suit not because his hair conveys a message but "because I like my hair long". Surely if we are to have workable rules of constitutional law, the validity of the regulation cannot turn on the plaintiff's subjective motivation in wearing his hair long.
 
 
 27
 For these reasons, we think it inappropriate that the protection of the First Amendment be extended to the wearing of long hair. Moreover, it is our belief that the Supreme Court's decision in Tinker supports this view. In Tinker, three students were suspended for wearing to school black armbands to publicize their objection to Viet Nam hostilities. The court concluded that the wearing of armbands under such circumstances was closely akin to pure speech and thus fell within the ambit of the First Amendment. The court, however, clearly distinguished the case which we have here of hair and grooming regulations. It observed:
 
 
 28
 The problem posed by the present case does not relate to regulation of the length of skirts or the type of clothing, to hair style, or deportment. * * * Our problem involves direct, primary First Amendment rights akin to "pure speech."[7]
 
 
 29
 The conclusion is inescapable that this paragraph was intended to delimit the outer reach of the court's holding. We read this language as indicating that the right to style one's hair as one pleases in the public schools does not inherit the protection of the First Amendment.
 
 
 30
 B. Griswold.-A second basis frequently asserted for such a constitutional right is found in an expansive reading of the Supreme Court's holding in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). In that case, the court invalidated a Connecticut statute forbidding the use of contraceptives on the ground that it unjustifiably infringed the right of marital privacy. It is argued that from this holding may be generalized a pervasive constitutionally protected zone of personal privacy which may be infringed only for compelling reasons. See e. g. Bishop v. Colaw, 8 Cir. 1971, 450 F.2d 1069.
 
 
 31
 In our view, such a reading of Griswold is unwarranted. We think Griswold rested somewhat narrowly on the unacceptable intrusion in the privacy of the home which would have been required to enforce the Connecticut statute. In contrast, a regulation restricting the length of hair restricts privacy not at all. Hair is, of course, worn for all the world to see. We do not think Griswold stands for any general "right to go public as one pleases".[8]
 
 
 32
 C. Substantive Due Process.- Rather than relying narrowly on Griswold, it may be argued more generally that the right to wear hair at any length inheres in the "liberty" assurance of the Due Process Clause of the Fourteenth Amendment.[9] There is little doubt that the Due Process Clause has occasionally been relied upon in recent years as the source of substantive constitutional rights even where the rights were not specifically enumerated in the Bill of Rights. The right of marital privacy announced in Griswold is but one example of this recent emergence of substantive due process in the area of individual liberties. Other examples are the constitutional right to travel to foreign countries[10] and the right to travel interstate.[11] It is axiomatic, however, that federal courts should recognize such substantive constitutional rights only where "fundamental" individual liberties are at stake.[12]
 
 
 33
 We think it plain that individual liberties may be ranked in a spectrum of importance. At one end of the spectrum are the great liberties such as speech, religion, and association specifically guaranteed in the Bill of Rights. Of equal importance are liberties such as the right of marital privacy that are so fundamental that, even in the absence of a positive command from the Constitution, they may be restricted only for compelling state interests. At the other end of the spectrum are the lesser liberties that may be invaded by the state subject only to the same minimum test of rationality that applies to all state action. See, e. g., Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963).
 
 
 34
 The question before this court is where on the spectrum lies the asserted right of a high school student to wear hair in school at the length that suits him. It is our firm belief that this asserted freedom does not rise to the level of fundamental significance which would warrant our recognition of such a substantive constitutional right. We are influenced in this decision by numerous factors. First, the interference with liberty is a temporary[13] and relatively inconsequential one. The regulation in question does, after all, leave these students a rather wide range of personal choice in their dress and grooming. We do not have here "a nation bent on turning out robots * * * insist[ing] that every male have a crew cut and every female wear pigtails".[14] Secondly, we feel compelled to recognize and give weight to the very strong policy considerations in favor of giving local school boards the widest possible latitude in the management of school affairs. School administrators must daily make innumerable decisions which restrict student liberty. The briefs in this case afford an interesting sampling of the kinds of restrictions which have been held valid in the Texas state courts. Examples are regulations requiring students to park automobiles in a designated parking lot and not move them until a designated hour;[15] forbidding students from leaving school grounds during recess and noon hour;[16] prohibiting membership in high school fraternities and sororities;[17] forbidding students from taking lunch except from the school cafeteria.[18] Each of these regulations imposes restrictions on student liberty at least as substantial as the regulation here in question. It would require little imagination to formulate an equally plausible due process attack on the validity of each restriction. Does it follow that school officials should be called into federal court and given the burden of demonstrating "factually" that these restrictions serve "compelling" interests and that no "alternatives less restrictive of liberty" are available? We think not.
 
 
 35
 Federal courts, and particularly those in this circuit, have unflinchingly intervened in the management of local school affairs where fundamental liberties, such as the right to equal education, required vindication. At times that intervention has, of necessity, been on a massive scale. But in the grey areas where fundamental rights are not implicated, we think the wiser course is one of restraint.
 
 
 36
 D. Equal Protection.-The court below held that the denial of free public education to Karr on the basis of the length of his hair was an arbitrary classification which violated the Equal Protection clause of the Constitution.
 
 
 37
 The Equal Protection clause has not generally been relied upon as a basis for invalidating hair-length regulations with the exception of a Seventh Circuit case which held that hair regulations are violative of the Equal Protection clause because they apply solely to male students and not to female students.[19] In this case, however, the theory of the district court is that, as between male students, any classification based upon hair length contravenes the Equal Protection guarantee.
 
 
 38
 We find this theory without merit. This classification is not based on the "suspect" criterion of race[20] or wealth[21] which would require application of the "rigorous" standard of equal protection scrutiny. Accordingly, the classification is invalid under the Equal Protection clause only if this court can perceive no rational basis on which it is founded. Walters v. City of St. Louis, 347 U.S. 231, 74 S.Ct. 505, 98 L.Ed. 660. For reasons set forth in Section IV of this opinion, it is clear that the classification meets this standard of review.
 
 IV.
 
 39
 In view of our holding that there is no substantial constitutional right to wear hair in the fashion that suits the wearer, the conclusion is inescapable that the district court erred in enjoining enforcement of the Coronado High School hair regulation.
 
 
 40
 Relying on Ferrell, the district court ruled that the right to wear hair long in public high schools is constitutionally protected and that the school board bore a substantial burden of justification that could be met only by demonstrating factually the necessity for the regulation. This ruling represented an erroneous assessment of the burden of proof and an erroneous standard of judicial review. State regulations which do not affect fundamental freedoms are subject to a much less rigorous standard of judicial review than is applicable when such fundamental rights are at stake. In such cases, the appropriate standard of review is simply one of whether the regulation is reasonably intended to accomplish a constitutionally permissible state objective. See, e.g., Williamson v. Lee Optical of Okla., Inc., 348 U.S. 483, 491, 75 S.Ct. 461, 99 L.Ed. 563, 574; Ferguson v. Skrupa, supra. Moreover, the burden is not upon the state to establish the rationality of its restriction, but is upon the challenger to show that the restriction is wholly arbitrary.[22]
 
 
 41
 In this case, it is evident from the record that the school authorities seek only to accomplish legitimate objectives in promulgating the hair regulation here in question. The record nowhere suggests that their goals are other than the elimination of classroom distraction, the avoidance of violence between long and short haired students, the elimination of potential health hazards, and the elimination of safety hazards resulting from long hair in the science labs. On a record such as this, we hold that it was clear error to conclude that the school board regulation failed to meet the minimum test of rationality that was properly applicable.
 
 V.
 
 42
 The record in this case is an impressive testimonial to the burden which has been placed on the federal courts by suits of this nature. This lawsuit required four full days of testimony in the district court. The case comes to this court on a printed appendix exceeding 300 pages in length. Nor is this case unusual. Within this circuit alone, there have been numerous other cases in which the plaintiffs made almost identical contentions and the school boards offered these same justifications.[23]
 
 
 43
 In each of the cases, the district courts have been called upon to hold a full evidentiary hearing on the issue of whether long hair is, in fact, disruptive of the educational process. In this circuit, different district courts have, on strikingly similar records, reached wholly dissimilar results. Most district courts have concluded that the school authorities have demonstrated that their regulations are necessary. Some district courts have, however, concluded that the regulations are "unreasonable" or "arbitrary" and struck them down.
 
 
 44
 It is our view that the validity of hair-length regulations should not turn on the individual views of the district judges of this circuit as to the "reasonableness" of grooming regulations. A different rule of law should not prevail in, for example, Hillsborough County, Florida,[24] than in the Pampa, Texas Independent School District.[25]
 
 
 45
 Given the very minimal standard of judicial review to which these regulations are properly subject in the federal forum, we think it proper to announce a per se rule that such regulations are constitutionally valid.[26] Henceforth, district courts need not hold an evidentiary hearing in cases of this nature. Where a complaint merely alleges the constitutional invalidity of a high school hair and grooming regulation, the district courts are directed to grant an immediate motion to dismiss for failure to state a claim for which relief can be granted.
 
 
 46
 In conclusion, we emphasize that our decision today evinces not the slightest indifference to the personal rights asserted by Chesley Karr and other young people. Rather, it reflects recognition of the inescapable fact that neither the Constitution nor the federal judiciary it created were conceived to be keepers of the national conscience in every matter great and small. The regulations which impinge on our daily affairs are legion. Many of them are more intrusive and tenuous than the one involved here. The federal judiciary has urgent tasks to perform, and to be able to perform them we must recognize the physical impossibility that less than a thousand of us could ever enjoin a uniform concept of equal protection or due process on every American in every facet of his daily life.
 
 
 47
 Reversed.
 
 BELL, Circuit Judge (concurring specially):
 
 48
 I concur in the result that this case on the facts of record does not present a substantial federal question, and that the decision of the district court should be reversed.
 
 
 49
 I also concur in so much of the prevailing opinion as stands for the proposition that dress codes of the type in question are to be tested on a rational basis standard, i.e., whether the regulation is reasonably intended to accomplish a constitutionally permissible state objective.
 
 
 50
 This means, as I understand the prevailing opinion, that the burden is on one objecting to a hair regulation to allege and prove that the regulation is arbitrary or that it has been arbitrarily applied; otherwise, the federal courts are not to intrude into school affairs of this nature. The proof here did not rise to that level. The findings of the district court to the contrary are clearly erroneous.
 
 
 51
 The burden of proof-arbitrary standard-rational basis frame of reference is explicated by the knowledge that we have previously equated arbitrariness with an absence of rational basis. In Bicknell v. United States, 5 Cir., 1970, 422 F.2d 1055, it was said: ". . . In the law arbitrary . . . means 'having no rational basis.' " 422 F.2d at 1057.[1]
 
 
 52
 We have previously given effect to the rational basis test, Stevenson v. Board of Education of Wheeler County, Georgia, 5 Cir., 1970, 426 F.2d 1154, 1158, cert. den., 400 U.S. 957, 91 S.Ct. 355, 27 L.Ed.2d 265 (1970), and also to the due process and equal protection proscription of arbitrary application, Griffin v. Tatum, 5 Cir., 1970, 425 F.2d 201, 203. It is the element of arbitrariness which has not been made clear in our previous cases involving the validity vel non of school dress codes. This perhaps led the district court into error in assessing the thrust of the facts adduced to the extent of erroneously finding a substantial federal question.
 
 
 53
 WISDOM, Circuit Judge, with whom JOHN R. BROWN, Chief Judge, THORNBERRY, GOLDBERG, and SIMPSON, Circuit Judges, join, dissenting:
 
 
 54
 Hair styles change. A high school boy if he chooses should be able to wear his hair as Yul Brynner does or as Joe Namath does without fear of being deprived of an education by a majority of school board members who grew up at a time the crew-cut was fashionable.
 
 
 55
 Individual rights never seem important to those who tolerate their infringement. Yet the Bill of Rights and the Fourteenth Amendment were designed to limit the reach of majority control over fundamental personal rights. Many young men and boys regard long hair as an expression of affinity with their peers and disapproval of the older generations' handling of the Vietnam War and current social problems. Some may wear their hair long because the girls like it long. Either way, the right to wear one's hair as one pleases is a fundamental right implicit "within the commodious concept of liberty, embracing freedoms great and small". Richards v. Thurston, 1 Cir. 1970, 424 F.2d 1281.
 
 
 56
 Today a majority of this Court assembled en banc holds that it is but a trifling interference with a young person's freedom to deny him the right to wear his hair as he pleases. The Court apparently takes its cue from the late Mr. Justice Black's suggestion that the only "serious" aspect of a "long hair case" is "the idea that anyone should think the Federal Constitution imposes on the United States courts the burden of supervising the length of hair that public school students should wear". The Court tells us that hair length is not a "fundamental" matter, and with a few pecks at the typewriter advises the district courts of this circuit that they no longer need distract themselves with lawsuits of the gossamer stuff of this one. With due respect for our late Circuit Justice[1] and for my Brethren on this Court, I cannot subscribe to today's decision. In it, I discern no tenable explanation for the Court's holding that the interest in governing one's own personal appearance is an insubstantial interest unprotected by the Constitution.
 
 I.
 
 57
 I begin with the premise that the Bill of Rights is not a comprehensive catalogue of all the specific rights possessed by the people of this nation against the federal government. Indeed, Madison introduced the Ninth Amendment to the Constitution in response to the arguments of Hamilton and others that the enactment of a Bill of Rights was dangerous: dangerous because an enumeration of the people's rights might suggest "that those rights which were not singled out, were intended to be assigned into the hands of the General Government, and were consequently insecure." I Annals of Congress 439 (Gales and Seaton ed. 1834). Thus the Ninth Amendment reads, "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."
 
 
 58
 The Bill of Rights, then, does not provide an exhaustive list of the rights of the American people to freedom from government interference. I see no hint that today's majority disagrees with that conclusion. Nor do my Brothers dispute the suggestion that the Bill of Rights also provides no complete index of the rights guaranteed by the Due Process Clause against invasion by the states. Instead, the Court takes the position that there are at least some personal rights protected from state interference though not specifically sheltered by provisions of the Bill of Rights. The Court does not say so, but it apparently reaches this conclusion through the Due Process Clause directly, as Mr. Justice Harlan would have; or through the Due Process Clause read in light of the Ninth Amendment, in the fashion suggested by Mr. Justice Goldberg's opinion in Griswold v. Connecticut, 1965, 381 U. S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510.
 
 
 59
 I join the Court's statement that "federal courts should recognize . . . substantive constitutional rights only where 'fundamental' individual liberties are at stake." But in determining whether this particular liberty is "fundamental" or not, the majority and I part company.
 
 
 60
 The majority establishes a "spectrum" of values along which individual liberties may be "ranked", and proceeds to "rank" a high school students' right to determine the length of his hair along with "the lesser liberties that may be in-the same minimum test of rationality that applies to all state action." We are told that "numerous factors" explain this ranking, but when the dust has settled the Court adduces only two "factors" in support of its decision to withhold recognition to this right as fundamental.
 
 
 61
 First, the Court says, "the interference with liberty is a temporary and relatively inconsequential one" which "leave[s] these students a rather wide range of personal choice in their dress and grooming." I fail to see what the duration of this limitation on personal freedom has to do with its seriousness. For many students, however, hair regulations will restrict their personal appearance for four, or even six years. That is hardly a de minimis restriction, if indeed our Constitution can be construed to overlook "small" infringements of constitutionally guaranteed interests. And I do not think it can. Moreover, if the "temporary" aspect of these regulations is what prevents them from infringing fundamental human rights, I suppose that today's decision would authorize a city ordinance on hair regulations for the general adult population limited in duration to, say, the summer months. Most important, though, the "wide range of choice" which students supposedly retain is substantially reduced by today's decision, which strikes from the district court dockets all complaints which "[allege] the constitutional invalidity of a high school hair and grooming regulation." The Court has given the public high schools in this Circuit a green light to ban jeans, T-shirts, sandals, wide ties, maxi skirts, "distractingly" colorful garb of all kinds-in short, the chosen attire of many of our young people. Indeed, as I read the Court's opinion, it precludes constitutional examination of a public high school requirement of a daily uniform dress. And yet, to justify today's per se rule, the Court assures us that students retain considerable latitude in determining their own dress and appearance.
 
 
 62
 I am equally unpersuaded by the Court's argument that hair regulations are constitutionally unassailable because (superficially) they resemble a number of other restrictions on student liberty. This test of "inverse quantitative insubstantiality" has an imposing, reverberative resonance, but so far as I am aware, it is a novel test for the resolution of important constitutional issues. After a nod in the direction of school board autonomy, the Court acknowledges that the real basis for its second rationale is the spectre of school officials being ruled into court to justify the restrictions which they impose on their students. As if desegregation were not enough for school officials to worry about! It is true that the Court's decision aborts the development of potentially far-reaching litigation over the rights of students, but these considerations do not explain the Court's belittling characterization of a young person's right to present himself to the world as he pleases so long as he causes no one any harm. Almost every day, the federal courts spawn new classes of litigation-most recently, perhaps, litigation over the constitutional rights of women. Regrettable as the overcrowding of our dockets may be, in and of itself the prospect of exacerbating that condition is no reason to blink a violation of a liberty which obviously means a great deal to many young people. Thus the Court's second justification for concluding that hair rules do not infringe fundamental liberties is but a statement of certain constitutionally irrelevant consequences of its decision. It is by no means a true justification for the conclusion the Court reaches.
 
 
 63
 To me the right to wear one's hair as one pleases, although unspecified in our Bill of Rights, is a "fundamental" right protected by the Due Process Clause. Hair is a purely personal matter-a matter of personal style which for centuries has been one aspect of the manner in which we hold ourselves out to the rest of the world. Like other elements of costume, hair is a symbol: of elegance, of efficiency, of affinity and association, of non-conformity and rejection of traditional values. A person shorn of the freedom to vary the length and style of his hair is forced against his will to hold himself out symbolically as a person holding ideas contrary, perhaps, to ideas he holds most dear. Forced dress, including forced hair style, humiliates the unwilling complier, forces him to submerge his individuality in the "undistracting" mass, and in general, smacks of the exaltation of organization over member, unit over component, and state over individual. I always thought this country does not condone such repression.
 
 
 64
 My differences with the Court's understanding of "fundamental" rights are differences of legal attitude and philosophy. Judge Learned Hand once described "fundamental" as a word "whose office usually, though quite innocently, is to disguise what [judges] are doing and impute to it a derivation far more impressive than their personal preferences, which are all that in fact lie behind the decision." L. Hand, The Bill of Rights 70 (1958). I am sure Judge Hand would agree that his comments are equally applicable to judges' refusal to attach the "fundamental" label. For me, though, hair length regulations impinge upon the "fundamental" diversity, freedom, and expressiveness of our society, no small portion of which is comprised of students in our public schools.
 
 II.
 
 65
 I disagree strongly with the majority's disposition of the equal protection issue. The district court held that the hair regulation in question created two classes of citizens: those who are denied the public education guaranteed them by the Texas Constitution, and those who receive that education. The defining characteristic of the deprived class is that it is composed of males whose hair exceeds the length specified by the regulation at issue. Unimpeachably, the district court reasoned that "any distinction between those who receive this right [to a free public education] and those who do not must have a reasonable basis and must reasonably relate to the purpose for which the classification is made." After detailed consideration of the evidence, the district court concluded that the distinction drawn by their hair regulation "has no reasonable relationship * * * to its professed purposes or to the educational process as a whole." The district court found that the classification established by the hair regulation is "utterly unreasonable" and therefore that it violated the Equal Protection Clause of the United States Constitution.
 
 
 66
 The majority disposes of this finding by ignoring it. The Court adopts a framework of Equal Protection analysis that is, with all respect, just dead wrong. For purposes of argument, let us assume that the Court's denial of the "rigorous" standard of Equal Protection review is required here, and let us acknowledge that "the classification is invalid under the Equal Protection clause only if this court can perceive no rational basis on which it is founded." So far so good. But the Court departs from the proper analytic framework when, in part IV of its opinion, it states that "the appropriate standard of review is simply one of whether the regulation is reasonably intended to accomplish a constitutionally permissible state objective." (Emphasis added.) The Court accepts a test for rationality which looks exclusively to the intentions or goals of those who enact a law or promulgate a regulation. This sidestep frees the Court from dealing with the district court's specific and heavily factual finding that this hair regulation completely fails to accomplish its stated objectives. Thus the Court concludes:
 
 
 67
 In this case, it is evident from the record that the school authorities seek only to accomplish legitimate objectives in promulgating the hair regulation here in question. The record nowhere suggests that their goals are other than the elimination of classroom distraction, the avoidance of violence between long and short haired students, the elimination of potential health hazards, and the elimination of safety hazards resulting from long hair in the science labs.
 
 
 68
 But the goals of the school authorities have nothing at all to do with the resolution of this case, in view of the district court's explicit finding that "the distinction drawn has no reasonable relationship * * * to its professed purposes." The motivations, goals, purposes, or objectives of those who enact laws may help courts to understand the effects of those laws. See Hall v. St. Helena Parish School Board, E.D.La. 1961, 197 F.Supp. 649, aff'd per curiam 368 U.S. 515, 82 S.Ct. 529, 7 L.Ed.2d 521 (1962); Davis v. Schnell, S.D.Ala., 81 F.Supp. 872, aff'd per curiam 336 U.S. 933, 69 S.Ct. 749, 93 L.Ed. 1093 (1949); Poindexter v. Louisiana Financial Assistance Commission, E.D.La.1967, 275 F.Supp. 833, aff'd per curiam 389 U.S. 571, 88 S.Ct. 693, 19 L.Ed.2d 780 (1968). See Note, Legislative Purpose and Federal Constitutional Adjudication, 83 Harv.L.Rev. 1887 (1970). But it has never been held that "a legislative act may violate equal protection solely because of the motivations of the men who voted for it." Palmer v. Thompson, 1971, 403 U.S. 217, 224, 91 S.Ct. 1940, 1944, 29 L.Ed.2d 438. Given this premise, the failure of a law or regulation to achieve constitutionally permissible objectives surely cannot be cured by the good intentions of those who enact it.
 
 
 69
 Instead, the proper inquiry is to evaluate the classification actually created by a statute or regulation in light of its avowed or readily discernible objective. As Chief Justice Burger stated for the Supreme Court only a few weeks ago, the Equal Protection Clause withholds from the states "the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation' " Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971).
 
 
 70
 Reed and all its forebears make clear that the majority today has not addressed itself to the question before us on this appeal, namely, whether denying a public high school education to a young man because he has long hair does in fact-not in hope, aspiration, or theory-bear "a fair and substantial relation" to the objectives of the regulation. The district court carefully considered each of the objectives proffered by the school authorities in this case. In light of the evidence presented to it, the district court concluded that weeding out long haired young men bore no "reasonable relationship" to the stated objectives. As I read the specific, point-by-point analysis by the district court, that court found "[from] the overwhelming preponderance of evidence" that long hair restrictions have no appreciable effect upon the achievement of legitimate educational objectives. As Judge Aldrich, concurring, pointed out in Bishop v. Colow, 8 Cir. 1971, 450 F.2d 1069: "The connection between long hair and the immemorial problems of misdirected student activism and negativism, whether in behavior or in learning, is difficult to see. No evidence has been presented that hair is the cause, as distinguished from a possible peripheral consequence, of undesirable traits, or that the school board, Delilah-like, can lop off these characteristics with the locks".
 
 
 71
 The district court's finding of fact is not questioned by the majority today. Indeed, the majority does not even address itself to this finding as a result of the "intentions-objectives-goals" test it embraces blindly. Nor do I believe that the burden of proof applied below was erroneous. The district court stated that the school authorities not only failed to sustain the burden of proof placed on them by a "compelling interest" test, but in addition failed to prove to the court's satisfaction that the hair regulation was even reasonable. My Brothers seem to overlook the ever-present possibility that one who does not bear the burden of proof, as the school authorities did not under the rational relation test, may nevertheless fail to convince the finder of fact of his point of view. And that is precisely what happened below:
 
 
 72
 Not only have defendants failed to sustain [the substantial burden imposed on them by a "fundamental" interest analysis], but the Court finds, from the preponderance of credible evidence, that in fact there is no reasonable relationship between the length of male high school students hair and any alleged disruption of the educational process it is defendants' duty to maintain. This is not a case where the state supported factually the connection between its interest and the regulation in question. Nor is this a case where the state's evidence was uncontroverted. This Court has studied the evidence offered by both sides with utmost care, made its credibility choices, including the weighing of opinions offered by both sides for expertise and underlying basis, and has found nothing to justify the regulation here attacked but undifferentiated and unrealized fears and speculations. A substantial preponderance of the credible evidence establishes that the justifications urged are in fact unreasonable and that the regulation does more harm than good.
 
 
 73
 Thus the Court today manages to promulgate a per se rule upholding hair regulations while in not a single word, phrase, sentence, or paragraph does it challenge the district court's considered finding that the rule before us bears no reasonable relation to the accomplishment of a legitimate state objective. Nor does the Court say that any error of law infected the judgment of the lower court in arriving at the finding of unreasonableness. How is today's sleight of hand achieved? By sugaring over with talk of "good intentions" the total failure of this regulation to carry those intentions into effect. I dissent from this novel and unexplained method of writing the Equal Protection Clause out of our Constitution even if it threatens to impose on this Court the task of bringing to fruition the full spectrum of rights which high school students enjoy with all other Americans.
 
 
 74
 I ask: What is the important state interest that permits a public school board to deny an education to a boy whose hair is acceptably long to his parents but too long to suit a majority of the School Board of El Paso, Texas?
 
 
 75
 I submit that under the First and Fourteenth Amendments, if a student wishes to show his disestablishmentarianism by wearing long hair or has the whim to wear long hair, antidisestablishmentarians on public school boards have no constitutional authority to prevent it.
 
 
 76
 GODBOLD, Circuit Judge, with whom JOHN R. BROWN, Chief Judge, and THORNBERRY and SIMPSON, Circuit Judges, join, dissenting:
 
 
 77
 I would continue to apply in this case, as we have in the past, the standards of Stevenson v. Board of Education of Wheeler County, 426 F.2d 1154 (5th Cir. 1970), and Ferrell v. Dallas Independent School District, 392 F.2d 697 (5th Cir.), cert. denied, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (1968). Under those standards, and Fed.R.Civ.P. Rule 52(a), we are required to affirm the District Court. Our duty to follow Rule 52(a) is no less stringent in the rare case-like this one-in which the district court has found a hair or dress regulation unconstitutional as it is in the much more frequent cases in which district courts have upheld regulations. In the tension between, at one end, a compelling desire to get the courts out of hair cases by the promulgation of new law if necessary, and, at the other end, to expand the scope of protection accorded to students by our prior decisions, what has dropped out of sight is that the standards already established in this Circuit, plus the finding of the District Court that the regulation in question has no reasonable relation to its professed purpose or to the educational process as a whole, should be the end of this case. I would affirm the District Court and stick to the task of deciding cases as they are presented to us.
 
 RONEY, Circuit Judge (dissenting):
 
 78
 I dissent on a very narrow ground. I would hold that there is a Federal Constitutional question involved where students have virtually no choice as to what school they will attend for public education through the high school level, resulting as a practical matter in compulsion by the government, and where the school hair-length regulation follows them out of the schoolhouse door.
 
 
 79
 As other courts have had occasion to note, a student can indulge in most vagaries of dress and behavior during non-school hours and then abandon them at the schoolhouse steps, but he cannot grow and ungrow his hair. Breen v. Kahl, 419 F.2d 1034, 1038 (7th Cir. 1969);[1] Richards v. Thurston, 424 F.2d 1281, 1285 (1st Cir. 1970);[2] Westley v. Rossi, 305 F.Supp. 706, 713 (D.Minn. 1969);[3] Dunham v. Pulsifer, 312 F. Supp. 411, 419 (D.Vermont 1970).[4] Thus, a regulation requiring a student to shorten his hair effects a substantial intrusion into his private life in a way that is important to him, where the school board has no authority or reason to interfere.
 
 
 80
 It is precisely this kind of intrusion into the private lives of citizens which the Ninth Amendment was designed to protect against. Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L. Ed.2d 510 (1965).
 
 
 
 [1]
 In March 1960, the Board of Trustees of the El Paso Independent School District first adopted a general good grooming regulation for all public school children. This grooming regulation was amended in September, 1967; September, 1968; and May, 1969. In May, 1970, the Student Advisory Committee to the Superintendent of Schools expressed dissatisfaction with the grooming regulation. In response, the Board of Trustees established in Ad Hoc Committee on Student Grooming and Dress, composed of a student, parent, and administrator from each of the El Paso Public High Schools to determine whether a grooming code was needed for the El Paso schools and what the content of the code should be. The committee recommended and the School Board adopted the code which is the subject of this suit. The code provides, in pertinent part, as follows:
 The matter of student grooming is of utmost concern to parents who realize the importance of seeing that children are properly attired when they leave for school each day. Also, student behavior is influenced by proper dress and grooming. Consequently, student grooming is the proper concern of school administrators and teachers.
 In order to help ensure proper acceptable behavior on the part of the students, it becomes necessary to establish certain guidelines to aid parents and students in selecting the proper attire for the school year. Schools also recognize that parents are basically responsible for their children's dress and general appearance. The role of the school is one of guidance for pupils in an effort for total education and the development of proper attitudes.
 Student dress will be considered acceptable if it does not violate any of the three following principles:
 
 
 [1]
 Clothing worn is not to be suggestive or indecent
 
 
 [2]
 Clothing and general appearance is not to be of the type that would cause a disturbance or interfere with the instructional program
 
 
 [3]
 Clothing and general appearance is to be such as not to constitute a health or safety hazard
 Guidelines for dress and grooming are:
 
 
 [1]
 Hair may be blocked, but is not to hang over the ears or the top of the collar of a standard dress shirt and must not obstruct vision. No artificial means to conceal the length of the hair is to be permitted; i. e., ponytails, buns, wigs, combs, or straps
 Cleanliness of body and clothing is expected of all students at all times.
 No child shall be admitted to school or shall be allowed to continue in school who fails to conform to the proper standards of dress.
 
 
 [2]
 392 F.2d at 702
 
 
 [3]
 Id. at 703
 
 
 [4]
 See Wood v. Alamo Heights Indep. School Dist., 5 Cir. 1970, 433 F.2d 355, aff'g per curiam D.C., 308 F.Supp. 551; Stevenson v. Board of Educ., 5 Cir. 1970, 426 F.2d 1154, cert. den. 400 U.S. 957, 91 S.Ct. 355, 27 L.Ed.2d 265 (1970); Davis v. Firment, 5 Cir. 1969, 408 F.2d 1085, aff'g per curiam D.C., 269 F.Supp. 524; Whitsell v. Pampa Indep. School Dist., 5 Cir. 1971, 439 F.2d 1198, aff'g per curiam D.C., 316 F.Supp. 852; Glover v. Pettey, 5 Cir. 1971, 447 F.2d 495. In Griffin v. Tatum, 5 Cir. 1970, 425 F.2d 201, modifying D.C., 300 F.Supp. 60, this court affirmed the right of "school authorities in this circuit * * * to promulgate reasonable regulations concerning hairstyles". The court, however, affirmed as not being "clearly erroneous" the district court's judgment that application of the school's hair rule to Griffin's particular case was unreasonable
 
 
 [5]
 For a useful discussion of the First Amendment approach, see Note, 84 Harv.L.Rev. 1702, 1707-10 (1971)
 
 
 [6]
 As one commentator has suggested, the wearing of long hair may well convey nothing more than contempt for traditional notions of good grooming. See id., at 1710, n. 37
 
 
 [7]
 393 U.S. 503, at 509, 89 S.Ct. 733, at 737, 21 L.Ed.2d 731
 
 
 [8]
 Richards v. Thurston, 1 Cir. 1970, 424 F.2d 1281, 1283
 
 
 [9]
 This is the basis on which the First Circuit underpins its decision invalidating high school hair regulations. See Richards v. Thurston, 1 Cir. 1970, 424 F. 2d 1281. The Seventh Circuit also appears to have accepted the substantive due process approach. See Breen v. Kahl, 7 Cir. 1969, 419 F.2d 1034, cert. den. 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268 (1970)
 
 
 [10]
 Kent v. Dulles, 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958); Aptheker v. Secretary of State, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964)
 
 
 [11]
 Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969)
 
 
 [12]
 We reject the argument made by the First Circuit that:
 "[L]iberty" seems to us an incomplete protection if it encompasses only the right to do momentous acts * * *. We conclude that within the commodious concept of liberty, embracing freedoms great and small, is the right to wear one's hair as he wishes. Richards v. Thurston, 1 Cir. 1970, 424 F.2d 1281, 1285.
 The due process clause does, of course, protect freedoms "great and small" from wholly arbitrary state action. But it is only when "fundamental" liberties are at stake that we place upon the state a "substantial burden of justification" for the infringement of liberty.
 
 
 [13]
 It seems to us patently absurd to suggest that our decision here today provides a basis for sustaining a state regulation requiring conventional haircuts for the general adult population. See Richards v. Thurston, 1 Cir. 1970, 424 F.2d 1281, 1285 & n. 10; see also Ferrell v. Dallas Indep. School District, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125, denying cert. to 392 F.2d 697 (5 Cir. 1968) (dissenting opinion of Mr. Justice Douglas)
 
 
 [14]
 Ferrell v. Dallas Indep. School District, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125, denying cert. to 392 F.2d 697 (5 Cir. 1968) (dissenting opinion of Mr. Justice Douglas)
 
 
 [15]
 McLean Independent School District v. Andrews, Tex.Civ.App., 333 S.W.2d 886
 
 
 [16]
 Bozeman v. Morrow, Tex.Civ.App., 34 S.W.2d 654
 
 
 [17]
 Wilson v. Abilene Independent School District, Tex.Civ.App., 190 S.W.2d 406
 
 
 [18]
 Bishop v. Houston Independent School District, 119 Tex. 403, 29 S.W.2d 312
 
 
 [19]
 Crews v. Cloncs, 7 Cir. 1970, 432 F.2d 1259, 1266
 
 
 [20]
 Korematsu v. United States, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944)
 
 
 [21]
 Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169
 
 
 [22]
 See Bibb v. Navajo Freight Lines, Inc., 359 U.S. 520, 79 S.Ct. 962, 3 L.Ed.2d 1003 (1959) (Highway safety measures enacted by a state carry a strong presumption of validity); West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937) (Every presumption favors validity of legislative enactment and though court may hold views inconsistent with wisdom of law, it may not be annulled unless palpably in excess of legislative power);
 Corporation Commission of Oklahoma v. Lowe, 281 U.S. 431, 50 S.Ct. 397, 74 L.Ed. 945 (1930) (It is to be presumed that state in enforcing local policies will conform its requirements to federal guaranties).
 
 
 [23]
 See the cases cited in note 4, supra
 
 
 [24]
 Dawson v. Hillsborough County, Florida School Board, 5 Cir. 1971, 445 F.2d 308
 
 
 [25]
 Whitsell v. Pampa Indep. School Dist., 5 Cir. 1971, 439 F.2d 1198
 
 
 [26]
 As we have noted, grooming regulations are subject to the requirement that they not be wholly arbitrary. Thus, this rule of per se validity would not apply to a regulation which had an arbitrary effect, as, for example, a rule requiring that all male students shave their heads
 In addition, under the rule we announce today, federal courts would still be permitted to entertain an action alleging discriminatory enforcement of a grooming code.
 Precedent for this rule is found in the Tenth Circuit's recent decision in Freeman v. Flake, 10 Cir. 1971, 448 F.2d 258, cert. den. 405 U.S. 1032, 92 S.Ct. 1292, 31 L.Ed.2d 489. In that case the court held that, as a matter of law, complaints "which are based on nothing more than school regulations of the length of a male student's hair * * * are not cognizable in federal courts * * * [and] should [be] dismissed for failure to state a claim on which relief can be granted". See also King v. Saddleback Jr. College District, 9 Cir. 1971, 445 F.2d 932.
 
 
 [1]
 The rule of placing the burden on those objecting to a dress code to show that the code is arbitrary is analogous to the rule which is followed in zoning cases. In each instance the police power is involved. The decision of local zoning authorities is clothed with a presumption of validity and can be overcome only by a showing of arbitrariness. Shenk v. Zoning Commission of District of Columbia, 1971, 142 U.S.App.D.C. 267, 440 F.2d 295, 297; Diedrich v. Zoning Commission of District of Columbia, 1968, 129 U.S. App.D.C. 265, 393 F.2d 666. Cf. Goldblatt v. Town of Hempstead, 1962, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130
 
 
 [1]
 I am still unwilling to ascribe a similar view to the Supreme Court as a whole. It is true that the Court has only recently refused to grant certiorari in a "long hair" case arising in the Tenth Circuit. Freeman v. Flake, 1972, 405 U.S. 1032, 92 S. Ct. 1292, 31 L.Ed.2d 489, den'g cert. from 448 F.2d 258. Mr. Justice Douglas dissented from the denial of certiorari, as he had earlier this Term in Olff By and Through Olff v. East Side Union High School District, 1972, 404 U.S. 1042, 92 S.Ct. 703, 30 L.Ed.2d 736
 Under any circumstances, "the denial of a writ of certiorari imports no expression of opinion upon the merits of the case. . . ." United States v. Carver, 1923, 260 U.S. 482, 490, 43 S.Ct. 181, 182, 67 L.Ed. 361, 364. See generally Stern and Gressman Supreme Court Practice Sec. 5.7, and cases cited. It is particularly fitting to recall this maxim when "[t]he federal courts are in conduct and the decisions in disarray," as they are in their treatment of the problem before us today. The Supreme Court is responsible for ensuring that constitutional rights are uniform throughout this nation; it is hard to believe that the Court will close its eyes eternally to the disparate recognition now being given the constitutional rights of students who quite fortuitously inhabit different judicial circuits.
 
 
 [1]
 ". . . it would be impossible to comply with the long hair regulation during school hours and follow the wishes of the students and their parents as to hair length outside of school . . ."
 
 
 [2]
 ". . . a school rule which forbids skirts shorter than a certain length while on school grounds would require less justification than one requiring hair to be cut, which affects the student twenty-four hours a day, seven days a week, nine months a year."
 
 
 [3]
 "The rule here has effect beyond school, so were a school to prohibit a boy attending school with no shirt and bare to the waist, if he desires to go bare waisted in life at home or beyond the school he may take off the shirt as he leaves the school grounds. Such is not the case with hair . . . The hair restriction . . . invades private life beyond the school jurisdiction."
 
 
 [4]
 "Garments can be changed at will whereas hair, once it is cut, has to remain constant for substantial periods of time."