John E. ZELLER et al., Appellants,

v.

DONEGAL SCHOOL DISTRICT
BOARD OF EDUCATION
et al.

No. 72–1009.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule
12(6) July 25, 1973.

Resubmitted Under Third Circuit Rule
12(6) Oct. 29, 1973.

Resubmitted Under Third Circuit Rule
12(6) before the Court en banc
Jan. 8, 1975.

May 14, 1975.

Richard A. Ash, Lyman & Ash, Philadelphia, Pa., for appellants.

K. L. Shirk, Jr., Shirk, Reist & Buckwalter, Lancaster, Pa., for appellees.

Submitted July 25, 1973, Under Third Circuit Rule 12(6).

Before SEITZ, Chief Judge, and ALDISERT, Circuit Judge.

Resubmitted Oct. 29, 1973, Under Third Circuit Rule 12(6).

Before SEITZ, Chief Judge, and ALDISERT and WEIS, Circuit Judges.

Resubmitted Jan. 8, 1975, Under Third Circuit Rule 12(6).

Before SEITZ, Chief Judge, and VAN DUSEN, ALDISERT, ADAMS, GIBBONS, ROSENN, HUNTER, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The question is whether a schoolboy's complaint for money damages, filed after his exclusion from a soccer team for noncompliance with an athletic code regulating hair, states a claim for which relief can be granted under the Civil Rights Act, 42 U.S.C. § 1983.

■ Defendants are the Donegal School District, its president and chief executive officer, its superintendent of schools, the principal of Donegal High School, the school's athletic director and the coach of the soccer team. Plaintiffs contend that the code, which defendants promulgated, trenches upon rights guaranteed to Brent Zeller by the Constitution. Accordingly, plaintiffs seek damages on behalf of their son.[1]

Appellants have summarized the proceedings in the district court: "[A] hearing was held . . . on plaintiff's [sic] request for preliminary injunctive relief. At the commencement of this hearing defendants moved to dismiss the complaint for failure to state a claim, and decision was reserved on this motion. The Court then heard extensive testimony offered by both sides as well as receiving a stipulation of agreed upon facts that had been entered into by the parties for purpose of the hearing. Thereafter . . . the Court entered an order granting defendants' motion to

---

1. Coupled to the original complaint was a prayer for injunctive relief. Upon young Zeller's graduation from high school, however, the request for equitable relief became moot, and the appellants so concede. *See* Board of School Commissioners v. Jacobs, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975).

dismiss without making any finding of facts on the basis of 'the lack of a substantial federal question in Donegal School District's refusal to allow plaintiff to participate in soccer'." Appellants' Brief at 5. We affirm.

The protracted history of this appeal discloses that the members of this court have agonized over the troublesome issues presented. A panel first pondered the matter in July, 1973, and affirmed the judgment. No. 72–1009 (3d Cir., July 25, 1973). Upon presentation of a petition, that judgment was vacated and panel reconsideration ordered for October, 1973. However, deliberation was suspended when another case, posing a kindred issue and promising to give guidance, was set for in banc determination. Unfortunately, that case became moot. Comunale v. Mier, 505 F.2d 729 (3d Cir. 1974). Subsequently and on recommendation of the panel, a majority of the full court ordered in banc consideration of this case.

What divides this court today is not so much a disagreement as to abstract nuances of constitutional law as it is a difference in policy—how broadly the Constitution should be interpreted to provide actionable relief when asserted individual student rights collide with regulations of a school system.

We recognize that a strong case—indeed, one philosophically and academically sound—may be made for the point of view that, if a complaint is couched in the proper language asserting a constitutional deprivation, federal courts should provide the judicial forum in school hair cases. In addition to this court's previous decisions in Gere v. Stanley, 453 F.2d 205 (3d Cir. 1971), and Stull v. School Board, 459 F.2d 339 (3d Cir. 1972), the First,[2] Second,[3] Fourth,[4] Seventh,[5] and Eighth[6] Circuits have been hospitable to such claims. The District of Columbia,[7]

---

**2.** Richards v. Thurston, 424 F.2d 1281, 1284 (1st Cir. 1970) (emanating from sphere of liberty inherent in due process clause); *see* Friedman v. Froehlke, 470 F.2d 1351, 1353 (1st Cir. 1972) (National Guard reservists' wigs).

**3.** *See* Dwen v. Barry, 483 F.2d 1126, 1130 (2d Cir. 1973) ("While it has been argued that hair length controversies are much ado about nothing, we think there is a substantial constitutional issue raised by regulation of the plaintiff's [policeman's] hair length.").

**4.** Massie v. Henry, 455 F.2d 779, 783 (4th Cir. 1972) ("[W]e prefer . . . to treat [the] right to wear their hair as they wish as an aspect of the right to be secure in one's person guaranteed by the due process clause . . . but having overlapping equal protection clause considerations . . ."). *But cf. ibid.* at 784–85 (Boreman, J., dissenting) ("[M]y conclusion [is] that the matter is simply not a proper one for litigation in the federal courts.").

**5.** Holsapple v. Woods, 500 F.2d 49, 51–52 (7th Cir.) (per curiam), cert. denied, 419 U.S. 901, 95 S.Ct. 185, 42 L.Ed.2d 147 (1974) ("The law of this Circuit is well settled that in a school context, the right to wear one's hair at any length or in any desired manner is an ingredient of personal freedom protected by the United States Constitution."); Arnold v. Carpenter, 459 F.2d 939 (7th Cir. 1972); Crews v. Cloncs, 432 F.2d 1259 (7th Cir. 1970); Breen v. Kahl,

419 F.2d 1034 (7th Cir. 1969) (divided panel), cert. denied, 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268 (1970). *But cf.* Miller v. School Dist. No. 167, 495 F.2d 658, 664 (7th Cir. 1974) (teacher with beard and sideburns) ("Even if we assume for purposes of decision that an individual's interest in selecting his own style of dress or appearance is an interest in liberty . . . .."). *See also ibid.* at 665–66. Notwithstanding the latter language, the circuit has since stated in *Holsapple:* "Our decision in *Miller* did not dislodge our former holdings in *Breen, Crews,* and *Arnold* . . . .." 500 F.2d at 52 n.2.

**6.** Bishop v. Colaw, 450 F.2d 1069, 1075 (8th Cir. 1971) ("[T]he Constitution guarantees rights other than those specifically enumerated, and . . . the right to govern one's personal appearance is one of those guaranteed rights."); *see* Miller v. Ackerman, 488 F.2d 920, 922 (8th Cir. 1973) (per curiam) (Marine wigs). *But see* Rinehart v. Brewer, 491 F.2d 705 (8th Cir. 1974) (per curiam) (prison hair regulations upheld); Stradley v. Anderson, 478 F.2d 188, 190–91 (8th Cir. 1973) (police hair regulation upheld).

**7.** *See* Fagan v. National Cash Register Co., 157 U.S.App.D.C. 15, 481 F.2d 1115, 1119 (1973) (hair length as sex discrimination) ("We may fairly assume . . . the Supreme Court sees no federal question in this area.").

Fifth,[8] Sixth,[9] Ninth,[10] and Tenth [11] Circuits, on the other hand, have not been receptive to claims that tonsorial tastes are subsumed in substantial rights protected by the federal Constitution and, therefore, warrant federal court consideration.[12] On nine occasions now, the Supreme Court has denied certiorari to hair cases,[13] and on three of these, strong dissents have been filed.[14]

■ The starting point for our approach is that federal courts have jurisdiction to entertain complaints brought under 42 U.S.C. § 1983 [15] because of its jurisdictional counterpart, 28 U.S.C. § 1343(3).[16] Gere v. Stanley, *supra*, 453

---

**8.** *E. g.*, Karr v. Schmidt, 460 F.2d 609, 611 (5th Cir.) (sharply divided court in banc), cert. denied, 409 U.S. 989, 93 S.Ct. 307, 34 L.Ed.2d 256 (1972) ("Believing, as did Mr. Justice Black, that appellee Karr's asserted right to be free of school regulations governing the length of his hair is one that is not cognizable in federal courts, we reverse with direction that the case be dismissed for failure to state a claim for which relief can be granted.").

**9.** Gfell v. Rickelman, 441 F.2d 444 (6th Cir. 1971); Jackson v. Dorrier, 424 F.2d 213 (6th Cir.) (per curiam), cert. denied, 400 U.S. 850, 91 S.Ct. 55, 27 L.Ed.2d 88 (1970).

**10.** King v. Saddleback Jr. College Dist., 445 F.2d 932, 940 (9th Cir.), cert. denied, 404 U.S. 979, 92 S.Ct. 342, 30 L.Ed.2d 294 (1971) & sub nom. Olff v. East Side Union High School Dist., 404 U.S. 1042, 92 S.Ct. 703, 30 L.Ed.2d 736 (1972) ("We do not believe that the plaintiffs have established the existence of any substantial constitutional right which is in these two instances being infringed. . . . A court might disagree with [the school authorities'] professional judgment, but it should not take over the operation of their schools.").

**11.** Hatch v. Goerke, 502 F.2d 1189, 1192 (10th Cir. 1974); Freeman v. Flake, 448 F.2d 258, 262 (10th Cir. 1971), cert. denied, 405 U.S. 1032, 92 S.Ct. 1292, 31 L.Ed.2d 489 (1972) ("Complaints which are based on nothing more than school regulations of the length of a male student's hair do not 'directly and sharply implicate basic constitutional values' and are not cognizable in federal courts . ..").

**12.** *See generally* Goldstein, Reflections on Developing Trends in the Law of Student Rights, 118 U.Pa.L.Rev. 612 (1970); Goldstein, The Scope and Sources of School Board Authority to Regulate Student Conduct and Status: A Nonconstitutional Analysis, 117 U.Pa.L.Rev. 373, 399–401, 420–22 (1969); Gyory, The Constitutional Rights of Public School Pupils, 40 Fordham L.Rev. 201, 244–46, 249–51 (1971); Note, A Dilemma in Public High Schools: School Board Authority v. The Constitutional Right of Students to Wear Long Hair, 33 La.L. Rev. 697 (1973); 84 Harv.L.Rev. 1702 (1971).

**13.** Holsapple v. Woods, 500 F.2d 49 (7th Cir.), cert. denied, 419 U.S. 901, 95 S.Ct. 185, 42 L.Ed.2d 147 (1974); Karr v. Schmidt, 460 F.2d 609 (5th Cir.) (in banc), cert. denied, 409 U.S. 989, 93 S.Ct. 307, 34 L.Ed.2d 256 (1972); Freeman v. Flake, 448 F.2d 258 (10th Cir. 1971), cert. denied, 405 U.S. 1032, 92 S.Ct. 1292, 31 L.Ed.2d 489 (1972); King v. Saddleback Jr. College Dist., 445 F.2d 932 (9th Cir.), cert. denied, 404 U.S. 979, 92 S.Ct. 342, 30 L.Ed.2d 294 (1971) & sub nom. Olff v. East Side Union High School Dist., 404 U.S. 1042, 92 S.Ct. 703, 30 L.Ed.2d 736 (1972); Stevenson v. Board of Educ., 426 F.2d 1154 (5th Cir.), cert. denied, 400 U.S. 957, 91 S.Ct. 355, 27 L.Ed.2d 265 (1970); Jackson v. Dorrier, 424 F.2d 213 (6th Cir.) (per curiam), cert. denied, 400 U.S. 850, 91 S.Ct. 55, 27 L.Ed.2d 88 (1970); Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969), cert. denied, 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268 (1970); Ferrell v. Dallas Indep. School Dist., 392 F.2d 697 (5th Cir.), cert. denied, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (1968).

**14.** Justice Douglas filed opinions dissenting from the denial of certiorari in Freeman v. Flake, 405 U.S. 1032, 92 S.Ct. 307, 34 L.Ed.2d 256 (1972); Olff v. East Side Union High School Dist., 404 U.S. 1042, 92 S.Ct. 342, 30 L.Ed.2d 294 (1972), and Ferrell v. Dallas Indep. School Dist., 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (1968). In addition, the denials in *Karr* and *Jackson* show Justice Douglas as being of the opinion that certiorari should be granted; in *King*, the order denying cert. indicates that Justice White joined Justice Douglas in a contrary view.

**15.** § 1983. *Civil action for deprivation of rights*

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**16.** § 1343. *Civil rights and elective franchise*

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

. . . . .

(3) To redress the deprivation, under color of any State law, statute, ordinance, regula-

F.2d at 208. We recognize that the current § 1983 was part of the Civil Rights Act of 1871, passed by the Reconstruction Congress to effectuate the Fourteenth Amendment which, in turn, was adopted to guarantee recently emancipated blacks constitutional protections. *See* Hague v. C.I.O., 307 U.S. 496, 510, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). In the three-quarters of a century after its enactment, only a smattering of decisions invoked § 1983. *Cf.* Monroe v. Pape, 365 U.S. 167, 214 n.21, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (Frankfurter, J., dissenting) (collecting cases). In 1960, 280 civil rights cases were filed.[17] Then came the landmark case of Monroe v. Pape, *supra*, which judicially expanded available federal relief under the Act of 1871. From that day in February 1961 forward, the federal judiciary at all levels—district court, court of appeals and Supreme Court—has added new strength and increased vigor to the Act in the form of thousands of judicial decisions.[18]

The Director of the Administrative Office of the United States Courts has reported that 12,530 of 75,945 private civil actions filed in the United States District Courts during 1974 were civil rights actions; in the district courts of this circuit, 886 of 7,359 filings involved civil rights.[19] It therefore becomes apparent that a sizeable percentage of the constitutional questions presented to our federal courts are grounded in allegations of constitutional deprivation under color of state law, all of which tends to prove

the incisive observation of Karl N. Llewellyn: "[T]he focus of study, the point of reference for all things legal has been shifting, and should now be consciously shifted to the area of contact, of interaction, between official regulatory behavior and the behavior of those affecting or affected by official regulatory behavior . . . ."[20]

The sheer number of § 1983 suits, of its own momentum, has spawned a host of new interpretations of rights assured by the Fourteenth Amendment. That these dimensions to constitutional protections were unrecognized and undefined a few short years ago is among the meekest of understatements. Claims for relief which heretofore had taken the form of traditional tort, property and contract substantive law in the state courts are now being couched in terms of constitutional deprivation and presented to federal forums.[21] One of the realities of this innovativeness is that the federal decisions are being made, not on the basis of visible, time-tested rules or principles of substantive law, but on the basis of jural impressionism—subjective judgments of individual judges as to what constitutes protectable "liberty" or a denial of due process or equal protection.

Admittedly, the very nature of constitutional interpretation calls more for the making of value judgments than for the application of specific rules, principles, conceptions, doctrines or standards.[22] As Learned Hand said in describ-

tion, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

**17.** Ann.Rep. of Director of Administrative Office of the United States Courts—1968, Table X 2 (1969) [hereinafter cited as AO Ann.Rep. by year]. The AO statistics lump § 1983 suits with other civil rights actions, but § 1983 actions comprise the vast majority.

**18.** United States Code Annotated (1974) contains 468 pages of annotations under § 1983; the 1975 Supplement adds 104 pages.

**19.** AO Ann.Rep.—1974, Tables C 2, C 3. Taken together, all categories of civil rights ac-

tions comprise 12.7 percent of the pending federal civil caseload, or 13,647 of 107,230 cases. *Ibid.* at IX–29.

**20.** Llewellyn, A Realistic Jurisprudence—The Next Step, 30 Colum.L.Rev. 431, 464 (1930).

**21.** Aldisert, Judicial Expansion of Federal Jurisdiction: A Judge's Thoughts on Section 1983, Comity and the Federal Caseload, 1973 Ariz.St.U.L.J. 557, 567–71, 573–74; *see* H. Friendly, Federal Jurisdiction: A General View 90–92 (1973).

**22.** Pound, Hierarchy of Sources and Forms in Different Systems of Law, 7 Tul.L.Rev. 475, 482–86 (1933).

ing the broad clauses of the Constitution, "these fundamental canons are not jural concepts at all, in the ordinary sense; and in application they turn out to be no more than admonitions of moderation, as appears from the varying and contradictory interpretations that the judges themselves find it necessary to put upon them."[23] But this does not mean that a constitutional interpretation need not be "entirely principled." As Professor Wechsler emphasized: "A principled decision . . . is one that rests on reasons with respect to all the issues in the case, reasons that in their generality and their neutrality transcend any immediate result that is involved. When no sufficient reasons of this kind can be assigned for overturning value choices of the other branches of the Government or of a state, those choices, must, of course, survive. Otherwise, as Holmes said in his first opinion for the Court, 'a constitution, instead of embodying only relatively fundamental rules of right, as generally understood by all English-speaking communities, would become the partisan of a particular set of ethical or economical opinions . . ..' "[24]

■ We construe the Constitution as containing "fundamental rules of right" and we recognize that the concept of liberty may embrace certain personal and individual rights vaguely described as coming "within the protected penumbra of specific guarantees 'of the Bill of Rights". Griswold v. Connecticut, 381 U.S. 479, 487, 85 S.Ct. 1678, 1683, 14 L.Ed.2d 510 (1965) (Goldberg, J., concurring). But our interpretative analysis may not stop there. We agree with Dean Griswold that "[i]t is not . . . a question of strict construction or of activism. It is both. Construction is strict only to those who agree with the interpretation; to those who do not, it is simply wrong. Activism that carries us beyond the proper exercise of the judicial function is not legitimately called activism. The limits either way cannot be demonstrated. But there are limits. That is inherent in the idea of the judicial process. The supreme function of the judge is to recognize that there must be limits, both ways, avoiding undue literalism on the one hand, and too wide freedom of action on the other."[25] Accordingly, we have reexamined the premises underlying the rule of Stull v. School Board, *supra.*[26]

We are no longer convinced that reasons previously assigned in support of the school hair cases are persuasive; we are no longer satisfied that the reasons "in their generality and their neutrality transcend any immediate result" so as to justify overturning the value judgment of the school district.[27] We hold that

---

**23.** L. Hand, The Spirit of Liberty 278 (3d ed. 1960).

**24.** Wechsler, Toward Neutral Principles of Constitutional Law, 73 Harv.L.Rev. 1, 19 (1959).

**25.** Griswold, The Judicial Process, 31 Fed.B.J. 309, 319 (1972) (footnote omitted).

**26.** In *Stull* we evaluated the First Circuit view that the claimed constitutional hair right was implicit in the "liberty" assurance of the Due Process Clause of the Fourteenth Amendment and the Seventh Circuit opinion that it was more a penumbral or Ninth Amendment right, 459 F.2d at 345–47, concluding:

We agree that the differences in the above mentioned conceptual approaches to the problem are in considerable measure semantic and that there is indeed a common theme in all of these cases. However, it is our

view that the First Circuit's approach was correct; we therefore prefer to follow it and hold that the governance of the length and style of one's hair is implicit in the liberty assurance of the Due Process Clause of the Fourteenth Amendment. It may well be that this formulation in effect adopts the concept of penumbral rights; yet, we are inclined to agree with the view of the [First Circuit] court that in the absence of further guidance from the Supreme Court, we ought not to expand the Ninth Amendment beyond the notions applied to the right of (marital) privacy as expressed in *Griswold.*
*Ibid.* at 347 (footnote omitted).

**27.** In *Stull* we did not articulate specific reasons for the constitutional decision. *Cf. ibid.* at 345. In this connection, we think it appropriate to note the comment of Judge Boreman,

plaintiffs' contention does not rise to the dignity of a protectable constitutional right. In the language of Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968), the contention is one "not directly and sharply implicat[ing] basic constitutional values." Moreover, it is not one asserting denial of procedural due process in the context of suspension or expulsion. See Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Thus, the claim presented here is not one for which relief can be granted.

 In making our carefully considered value judgment that recognizes limits to redressable allegations of constitutionally-protected personal liberty by public school students, we are persuaded that we cannot arrogate to the federal courts the interpretation of the "conflicting ideals"[28] of student liberty and school regulation in the context of students' hair. The very nature of the school system, public and private, requires that student liberties and freedom may not be absolute. The faculty must prescribe curriculum; the administration must assign faculty, promulgate rules for the conducting of courses and extracurricular activities, and set standards for grading, promoting and graduating. As the Supreme Court[29] said recently in reversing the Eighth Circuit's finding of a substantive due process violation in a related school rights context:

It is not the role of the federal courts to set aside decisions of school administrators which the court may view as

dissenting in Massie v. Henry, 455 F.2d 779, 784 n.1 (4th Cir. 1972): "The general confusion . . . as to precisely which constitutional right, if any, is involved when a student is prohibited from letting his hair grow to a desired length, perhaps is, in itself, indicative that there is *none*."

**28.** Levi, An Introduction to Legal Reasoning, 15 U.Chi.L.Rev. 501, 542–43 (1948): "Each major concept written into the [Constitution] embodies a number of conflicting ideals. . . . The conflicting ideas are represented by satellite categories which interpret the written word. No one satellite concept can control.

lacking a basis in wisdom or compassion. Public high school students do have substantive and procedural rights while at school. See Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943); Goss v. Lopez, *supra*. But § 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations. The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members, and *§ 1983 was not intended to be a vehicle for federal court correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees.* See Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968); *Tinker, supra,* 393 U.S. at 507, 89 S.Ct. 733.

Wood v. Strickland, 420 U.S. 308, 326, 95 S.Ct. 992, 1003, 43 L.Ed.2d 214 (1975) (emphasis added).

Thus, notwithstanding our prior statements in this area, we determine today that the federal court system is ill-equipped to make value judgments on hair lengths in terms of the Constitution—whether an athletic code requiring that hair be "neatly trimmed" would not pass muster, whether one putting the

The major words written in the document are too ambiguous; the ideals are too conflicting, and no interpretation can be decisive. The satellite words are handled with a recognition that they involve the perennial problems of government; the relationship between problems of the person, the state, and property rights."

**29.** Although the Court divided 5–4 on the issue of the extent of the immunity from § 1983 damage suits enjoyed by school administrators and school board officials, the Court was unanimous in its ruling on the substantive due process claim.

limit on hair twelve inches below the collar would pass, or whether one drawing the line at four inches below the collar would be more difficult of solution. A very real concern is that the decisional process not become, in the phrase of Justice Hopkins, "amorphous and growing out of a shifting foundation laid on morals or community welfare" so as to invite "indiscriminate use by the courts in the name of either expediency or a private view of morality—both of which take on color and shade from the eye of the beholder." [30]

■■■ In summary, there are areas of state school regulation in which the federal courts should not intrude. Without attempting to survey a bright line between permissible and impermissible intervention, we conclude that student hair cases fall on the side where the wisdom and experience of school authorities must be deemed superior and preferable to the federal judiciary's. We decline to cast our conclusion in the form of a neat, stylized label—to pitch our decision into the jurisprudential pigeonhole of abstention. We merely hold, as a matter of policy and in the absence of "general" and "transcending" reasons to the contrary, that the asserted claim is not one for which relief can be granted in a federal forum.

■■ Having made a policy determination, it is important to underscore why we have drawn the line we have. In full recognition of the duty of federal courts to be hospitable to claims for redress of constitutional infringements, we have ruled deliberately. We have acted because of a felt concern that the sturdy tree of the federal judiciary is in need of pruning if it is to remain strong and stand tall, protecting basic individual liberties against unconstitutional impingements. We are concerned that, if the trimming process does not begin somewhere, the tree may topple of its own weight; that the proliferation of claims with exotic concepts of real or imagined constitutional deprivations [31] may very well dilute protections now assured basic rights. We have a genuine fear of "trivialization" of the Constitution. If this should occur, some of the monumental accomplishments in defining fundamental human rights and liberties may be compromised, and the protections accorded those rights and liberties threatened.

"We must never forget," in Justice Marshall's powerful phrase, "that it is a *constitution* we are expounding." [32] If it is to be a document not stating "rules for the passing hour, but principles for an expanding future," [33] we must not permit it to be seized upon in wholesale fashion, recklessly or indiscriminately. Otherwise, in every case where the defendant has acted under color of state law, the visible rules and principles of traditional disciplines of state law may be discarded for comparatively imprecise, newly-formed dimensions of the Fourteenth Amendment's "due process" and "liberty" concepts. Predictability and reckonability of societal regulations will lessen, and order and regularity of the law will suffer. [34]

Our decision offends no specific mandate of Congress and runs counter to no precise holding of the Supreme Court. Support for our view, as well as for the opposing view, may be found in an equal number of our sister Courts of Appeals. See nn.2–11, *supra.*

Thus, we find both jurisprudential and prudential support to draw the line and

---

30. Hopkins, Public Policy and the Formation of a Rule of Law, 37 Brooklyn L.Rev. 323, 324 (1971).

31. See Polite v. Diehl, 507 F.2d 119, 141 (3d Cir. 1974) (Kalodner, J., dissenting).

32. McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 407, 4 L.Ed. 579 (1819).

33. B. Cardozo, The Nature of the Judicial Process 83 (1921).

34. The significance of these considerations is manifest in Holmes' classic definition: "The prophecies of what the courts will do in fact, and nothing more pretentious, are what I mean by the law." Holmes, The Path of the Law, 10 Harv.L.Rev. 457, 461 (1897).

set the limits we do today. We believe that the facts of this case dictate the application of the principle enunciated in Epperson v. Arkansas:

> Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint. . . . By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values.

393 U.S. at 104, 89 S.Ct. at 270 (footnote omitted). In so concluding, we derive support from the Supreme Court's recent explicit reaffirmation of this basic *Epperson* tenet, Goss v. Lopez, *supra*, 419 U.S. at 578, 95 S.Ct. 729, and from the even stronger supportive statement in Wood v. Strickland, *supra*, at p. 606. Accordingly, we now align ourselves with the view expressed by Judge Breitenstein in Freeman v. Flake, 448 F.2d 258, 262 (10th Cir. 1971), cert. denied, 405 U.S. 1032, 92 S.Ct. 1292, 31 L.Ed.2d 489 (1972):

> Whether the allegations of a complaint state a claim for relief is a question of law. Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939. Complaints which are based on nothing more than school regulations of the length of a male student's hair do not "directly and sharply implicate basic constitutional values" and are not cognizable in federal courts under the principles stated in Epperson v. Arkansas.

▮▮ Although the foregoing reflects the views of only four judges of this court, when considered with Judge Rosenn's view which would require only "a rational basis for a hair regulation", the effect of today's decision is to overrule Stull v. School Board, *supra*, that held

school officials must demonstrate "an outweighing state interest." 459 F.2d at 338.

The judgment of the district court will be affirmed.

ROSENN, Circuit Judge (concurring and dissenting):

I agree that the complaint must be dismissed but my reasons for so doing differ from those of the plurality.[1]

The defendants, in addition to the Donegal School District Board of Education, are its president, its superintendent of schools, and other school officials. The complaint alleges that Zeller was excluded by the defendants from the high school's soccer team because "he was in violation of rule 18 of [Donegal High School's] code of conduct for athletes in that his hair was not 'trimmed above the ears and neatly trimmed in back.'" The district court dismissed the action as failing to state a substantial federal question.

As noted by the plurality, Brent Zeller's only demand for relief not rendered moot by his graduation is his demand for money damages. Assuming *arguendo* that a federal question is raised by the complaint, an award of damages against school officials nevertheless is subject to the qualified immunity which they enjoy. In Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), decided after this case was submitted to the court en banc, the Court held that a school official is immune from liability for compensatory damages in civil rights suits brought under 42 U.S.C. § 1983 unless

> he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the students affected, or if he took the action with the malicious intention to cause a deprivation of constitutional

1. In reviewing judicial proceedings, an appellate court must affirm a correct judgment of the district court even when that decision is based on an inappropriate ground or an incorrect reason. Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224 (1937); PAAC v. Rizzo, 502 F.2d 306, 308 n.1 (3d Cir. 1974).

rights or other injury to the student. . . . A compensatory award will be appropriate only if the school board member has acted with such an impermissible motivation or with such disregard of the student's clearly established constitutional rights . . ..

*Id.* at 322, 95 S.Ct. at 1001.

The complaint makes no allegations indicating a malicious intent on the part of defendants toward Zeller. The absence of malice is confirmed by the statement of facts stipulated by the parties and by the evidentiary hearing conducted pursuant to Zeller's motion for a preliminary injunction. The determination of whether a constitutional right is "clearly established," or is "basic" and "unquestioned," *id.*, may prove to be an onerous burden for the school board. *See id.* at 328–329, 95 S.Ct. 992. (Powell, J., concurring and dissenting). The tortuous history of this case, however, obviously indicates that Zeller's exclusion from the soccer team was not in violation of his clearly established constitutional rights. As Judge Aldisert observes, the circuit courts are divided almost evenly on whether hair cases in a school context implicate constitutional values, and the Supreme Court has not addressed itself to the question. The issue here perhaps is more sophisticated and complex since Zeller's complaint is predicated on his exclusion, not from school, but only from the soccer team. Under these circumstances and under the state of the law as it existed when the Donegal School Board took its action, the right asserted by Zeller was not clearly established and unquestioned under the Constitution.

I therefore agree with the plurality that the complaint must be dismissed. Since this case was submitted en banc to consider whether a student has a constitutional right to wear long hair, and since the plurality decides that he does not, I feel constrained to address the issue.

As I read Judge Aldisert's opinion, he would deny a federal forum for any claim by a student against school officials predicated on a deprivation of an alleged constitutional right to long hair, irrespective of whether the complaint sought injunctive, declaratory, or monetary relief. I well can understand his agitation in view of the current overwhelming groundswell in the federal courts of claims by litigants asserting constitutional deprivations under color of state law.[2] Troublesome as the overcrowding of our dockets may be, this distasteful development must not distract us from the essential legal question before us.

The legal issue confronting the plurality is whether the right asserted by Brent Zeller implicates constitutional values. Judge Aldisert holds that "plaintiff's contention does not rise to the dignity of a protectable constitutional right." This conclusion rests upon the premise that the federal court system is "ill equipped" in certain areas of state regulation where, as in the student hair cases, "the wisdom and experience of school authorities must be deemed superior and preferable to the federal judiciary's." I find these arguments appealing but I have reservations about their relevance for they go more to the latitude which courts should give school authorities in regulating constitutional rights, rather than to the existence of such rights.

The resolution of the issue depends very largely upon the point of beginning. Do hair cases commence because a student desires to wear his hair according to the latest styles, or do they begin because school officials arbitrarily demand uniformity in hair grooming? It seems to me a succinct distillation of the issue in hair cases is whether a student can be deprived of his education or the opportunity to compete on athletic teams because his hair style violates a school regulation. *See* Sherling v. Townley,

---

2. Other reasons for the recent explosion of federal litigation are analyzed carefully by

Judge Friendly in his provocative publication, Federal Jurisdiction, A General View (1973).

464 F.2d 587, 588–89 (5th Cir. 1972) (Tuttle, J., concurring). Stated in different terms, does a school district encroach significantly upon the personal freedom of a student when it curbs or regulates his hair style?

I agree with Judge Aldisert that a student's right to groom his hair is not derived from the right of privacy found within the penumbra of the Bill of Rights or within the ninth amendment. Hair, after all, is worn for all to see. Therefore, I do not view the right as fundamental in nature.

I am unable to agree that the right has no constitutional basis. Rather, I must subscribe to the view expressed in those cases that hold the right of a student to groom his hair is part of the sphere of personal liberty protected by the due process clause. This was the view initially suggested in Gere v. Stanley, 453 F.2d 205 (3d Cir. 1971), in which we stated that if the right to long hair exists under the Constitution, "it must arise under the 'liberty' and 'due process' portions of the Fourteenth Amendment," id. at 207 n. 4, and that the right was subject to "reasonable regulations" by the state. Id. at 209. The background of this personal right is based upon considerations expressed eloquently by Mr. Justice Brandeis in another context when he stated:

> The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness. They recognized the significance of man's spiritual nature, of his feelings and of his intellect. They knew that only a part of the pain, pleasure and satisfactions of life are to be found in material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. They conferred, as against the Government, the right to be let alone—the most comprehensive of rights and the right most valued by civilized men.

Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting).

I also believe that the right of a student to govern the length and style of his hair has equal protection overtones. See Massie v. Henry, 455 F.2d 779, 783 (4th Cir. 1972). A regulation which denies the student access to his education or to competitive sports merely because his hair exceeds the length specified by the school regulation creates two classes of students. One class is denied the public education guaranteed by the constitution of Pennsylvania and the other class receives it. In the words of Judge Wisdom, "[t]he defining characteristic of the deprived class is that it is composed of males whose hair exceeds the length specified by the regulation." Karr v. Schmidt, 460 F.2d 609, 621 (5th Cir. 1972) (Wisdom, J., dissenting).

The plurality opinion would, as I read it, deny students a federal forum for their hair claims regardless of the arbitrariness of the regulation, or the classification created thereby. If a school board arbitrarily may regulate the length of a male student's hair, may it not also arbitrarily require that he wear no hair? If a school board arbitrarily may regulate the length of a student's hair, may it not also capriciously require female students to shear their hair? I cannot believe that such a result is countenanced by the due process and equal protection clauses. At the very least, a classification must have some "fair and substantial relation to the object of the regulation so that all persons similarly circumstanced shall be treated alike." Royster Guano Co. v. Virginia, 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920), quoted in Johnson v. Robison, 415 U.S. 361, 375–76, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). I am unwilling, burdensome as it is, to shut the doors of the federal courthouse to the redress of such constitutional deprivations.

I would be the first to acknowledge that personal freedoms are rarely absolute, especially in a school environment. Students in a public school are expected to submit to reasonable regulations pertaining to attendance, curriculum, and

their relationships to their faculty and peers. Personal freedoms in a school environment "must yield when they intrude upon the freedom of others." Bishop v. Colaw, 450 F.2d 1069, 1075 (8th Cir. 1971). School officials should be afforded considerable latitude in reconciling the personal freedom of their students with the needs and purposes of school discipline and education. Also, as Judge Aldisert observes, the courts are ill-equipped to draw lines in hair cases or to plot permissible hair contours. A school regulation, therefore, impinging upon the personal freedom of a student should be measured by a determination as to whether there is a legitimate justification for the regulation. If school officials can prove a rational basis for a hair regulation, whether it promotes the furtherance of valid educational goals, health, or other legitimate purposes, they may restrict a student's personal freedoms consistent with both the due process and equal protection clauses.[3]

The application of such a test should produce several beneficial results. First, school authorities would be afforded the wide discretion they need in the complex task of educating our youth. Second, students would be discouraged from instituting actions unless there clearly was no legitimate basis for a regulation, a matter of no small concern in this age of congested court calendars. Finally, but perhaps most importantly, school authorities would be encouraged to promulgate regulations that are rational not arbitrary, legitimate not capricious.

Were it not for the mootness of all of Zeller's demands for relief except his demand for money damages, I would remand the case back to the district court for a determination as to whether there was a legitimate basis for rule 18 of the code of conduct for athletes. As it is, I concur in the dismissal of the complaint.

SEITZ, Chief Judge (dissenting).

I dissent from the holding of the plurality opinion that the complaint in this case may be dismissed for failure to state a constitutional claim upon which relief can be granted. I am also unable to subscribe to the position taken by Judge Rosenn that dismissal of the complaint can be sustained on the basis of the qualified immunity of school officials. I will treat the immunity question before turning to the rationale of the plurality holding.

The district court disposed of this cause of action by treating a motion for judgment on the pleadings as a "motion to dismiss under Rule 12 of the Federal Rules of Civil Procedure." Although the court withheld its ruling on the motion until completion of a hearing on plaintiff's petition for preliminary injunction, nothing in the court's opinion of October 29, 1971, indicates that reliance was placed on any matter other than the complaint in dismissing the suit. Furthermore, there was no entry of judgment for the defendants. This shows that the district court did not, on its own initiative, treat the defendants' motion as a motion for summary judgment and consider matters outside the pleading in reaching its decision. See Duane v. Altenburg, 297 F.2d 515 (7th Cir. 1962). The absence of an entry of judgment for defendants also underscores the fact that the district court did not attempt to consolidate trial on the merits with the hearing on the application for a preliminary injunction pursuant to Rule 65(a)(2), F.R.Civ.P. The subject of consolidation was never broached by the court at any time.

What we have before us, then, is the granting of a motion to dismiss for failure to state a claim on the ground that the basis for Brent Zeller's exclusion from the soccer team presented no sub-

---

**3.** It should be noted that this test is less restrictive than the one used in Stull v. School Board, 459 F.2d 339 (3d Cir. 1972), where the reasonableness of the hair regulation was judged in terms of other alternatives open to school officials. In my view, once school officials prove a legitimate justification for a regulation, a federal court's inquiry should be at an end.

stantial federal question. The issue of immunity was not raised by defendants' motion for judgment on the pleadings and was not considered by the district court in dismissing the action.[1] The notion of sustaining dismissal on a ground neither raised nor treated in the court below gives me pause. When such an affirmance is on the basis of the defendants' immunity from a suit for damages, I am forced to conclude that such action by an appellate court is impermissible.

A necessary predicate of Judge Rosenn's position is that the burden was on the plaintiff to allege facts necessary to negative the possibility that the defendants possessed a qualified immunity from liability for damages under 42 U.S.C. § 1983. Indeed, he relies on the fact that "the complaint makes no allegations indicating a malicious intent on the part of defendants. . . ." But it is my understanding that immunity is an affirmative defense which must be pleaded either by motion or by answer. Smith v. Losee, 485 F.2d 334 (10th Cir. 1973), cert. denied, 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974); Green v. James, 473 F.2d 660 (9th Cir. 1973); McLaughlin v. Tilendis, 398 F.2d 287 (7th Cir. 1968); see Lasher v. Shafer, 460 F.2d 343 (3rd Cir. 1972); 2A J. Moore, Federal Practice, Para. 8.27[4] (Cum. Supp.1973). Certainly the defense of "good faith," closely akin to the qualified immunity described by the court in Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), is a "matter of defense, the determination of [which] must await proceedings beyond a Rule 12(b)(6) motion." Safeguard Mutual Ins. Co. v. Miller, 472 F.2d 732, 734 (3rd Cir. 1973); Fidtler v. Rundle, 497 F.2d 794 (3rd Cir. 1974). Although Wood establishes a qualified immunity for school board members, I see nothing in that opinion which would reorder the

burden of pleading and proving that immunity. Thus, I am unable to agree that plaintiff's failure to allege facts in his complaint negativing a potential defense makes the complaint susceptible to a motion to dismiss for failure to state a claim.

Nor am I persuaded that dismissal can be justified on the ground that "the absence of malice is confirmed by the statement of facts stipulated by the parties and the evidentiary hearing conducted pursuant to Zeller's motion for a preliminary injunction." In reviewing the district court's granting of the motion to dismiss, the stipulation and evidence adduced at the injunction hearing appear irrelevant (1) because the burden was not on plaintiff at this stage of the proceedings to negate defendants' immunity and (2) because the district court did not rely on either the stipulation or the hearing record in dismissing the complaint for failure to state a claim upon which relief could be granted. Consideration of a motion to dismiss requires the court to look solely to the well-pleaded allegations of the complaint, as the district court did in this case. Grand Opera Co. v. Twentieth Century-Fox Film Corp., 235 F.2d 303 (7th Cir. 1956).

A distinction between this case and Wood reinforces my conclusion that that case cannot be relied on to dispose of the complaint of Zeller. While Wood establishes an immunity standard to be applied to school board members,[2] in the "specific context of school discipline," it intimates nothing with respect to the immunity or good faith defense of officials such as a school superintendent, principal, athletic director or soccer coach, all defendants in this case. Certainly the individual defendants here are cloaked with different types of authority and are charged with performing different acts which may not involve the "exercise of

---

1. Nor was immunity pleaded in defendants' answer except to the extent that an immunity defense may be read into defendants' assertion that they were not required to give any hearing to students since they were "acting under their responsibility under the laws of the Commonwealth of Pennsylvania in executing the athletic programs" of the school district.

2. The only parties before the Court in Wood were the individual members of the school board. 420 U.S. at 309, 95 S.Ct. 992.

discretion, the weighing of many factors, and the formulation of long-term policy" which the Court found to be involved in the functioning of a school board. 420 U.S. at 319, 95 S.Ct. 992. As the Supreme Court stated in Scheuer v. Rhodes, 416 U.S. 232, 243, 94 S.Ct. 1683, 1689, 40 L.Ed.2d 90 (1974), where immunity is not absolute

> the scope of [the] immunity will necessarily be related to facts as yet not established, either by affidavits, admissions or a trial record. Final resolution of this question must take into account the functions and responsibilities of these particular defendants in their capacities as officers of the state government, as well as the purposes of 42 U.S.C. § 1983.

The necessity of considering the factors detailed by the Court at least with respect to the non-school board member defendants appears to me an additional reason to conclude that it would be erroneous to sustain the district court's dismissal of the complaint on the basis of an immunity of undefined scope.

I now turn to the constitutional issues raised by this case. In his complaint plaintiff alleges that application of the Donegal High School "Code of Conduct for Athletes," which regulated hair length, violated his right of free speech and his rights to due process and equal protection guaranteed under the 1st and 14th Amendments to the United States Constitution. The plurality votes to affirm the dismissal of the complaint on the ground that plaintiff's complaint fails to assert a substantial federal question. They would overrule our previous decisions in Gere v. Stanley, 453 F.2d 205 (3d Cir. 1971) and Stull v. School Board, 459 F.2d 339 (3d Cir. 1972), which held that choice of hair length was protected under the liberty provision of the Due Process Clause. If the complaint asserts a constitutional claim, I believe it was error to dismiss the complaint. I address that issue.

The question, as I see it, is whether a public school student's right to choose hair length is so constitutionally trivial that the state may regulate the right without being called upon to demonstrate a rational basis for its action. In short, the court must decide whether the doctrine of *de minimus non curat lex* applies in the context of a federal action to vindicate an element of an individual's personal liberty under the Constitution. As the plurality notes in its opinion, the Circuits are split over the answers to these questions. The plurality has chosen to answer both questions in the affirmative. My answer is in the negative.

Of course one's response to either question implicates the importance one attaches to the concept of personal liberty. Our personal liberties are protected by the admonition in the 14th Amendment: "nor shall any State deprive any person of life, liberty, or property, without due process of law." This phrase has been construed to mean that personal liberties can be invaded by the state only if the state can demonstrate a rational basis for its action. In a very real sense this protection from arbitrary state action is what our constitutional system is all about.

An attack on state regulation of hair length is viewed by some as not worthy of federal consideration. Those so concluding necessarily bring personal value judgments to bear. Others feel that under the Constitution the authoritative value judgment belongs to each individual, and that state infringement of any aspect of personal liberty may only occur when the state can provide adequate justification for its action.

I endorse this latter view. I believe that access to the protection of constitutional rights afforded by the federal courts should not turn on the value which jurists attach to various personal liberties. Moreover, I think that it is particularly important for the courts to uphold individual liberties against non-rational state action in an age where the sanctity of the individual personality is being eroded by a variety of forces. Ju-

dicial vigilance is the price of individual liberty. Every unchallenged invasion of such liberties makes the next one that much easier to rationalize.

I am not impressed with the contention that federal courts have better things to do with their time than vindicate the right of a citizen to determine how he shall wear his hair in the absence of a rational explanation from the state for its regulation of that right. Certainly the federal courts are busy, but to sacrifice constitutional rights for the sake of alleviating the workload is to abdicate our responsibility. In my view, the federal courts' most fundamental task is the protection of constitutionally guaranteed personal liberties. If, based on our value standards, we pick and choose what constitutional aspects of personal liberty we will protect in the federal courts, we shall not only negate the primary function of these courts but, more importantly, denigrate the importance of individual rights in American society.

Certainly the list of rights and privileges contained in the Bill of Rights is not an all-inclusive enumeration of the individual rights of American citizens. The first eight amendments to the Constitution contain only a skeleton of highly visible and significant rights that were thought by the Framers to be vital to the form of government which they sought to perpetuate in this country. The Bill of Rights presumes the existence of a substantial body of rights not specifically enumerated but easily perceived in the broad concept of liberty and so numerous and so obvious as to preclude listing them. See 3 Story, Commentaries on the Constitution of the United States, 715–16 (1883).

Unquestionably the most significant activities that fall within the scope of the concept of liberty are those that bear with immediacy upon the unencumbered functioning of economic or governmental processes in this country. Thus, it has been recognized that there is a constitutionally protected right to contract and to travel. Other activities, somewhat less significant, are included in the concept since they have traditionally been thought of as elementary freedoms or of great personal moment, such as the decision to marry or to procreate. Yet I feel that even such great and significant freedoms would be meaningless if other personal aspects of citizens' lives could be manipulated by the government without justification.[3]

I perceive the same assumptions in the guarantee of liberty in the 14th Amendment as exist in the 5th Amendment and throughout the Bill of Rights. I therefore interpret the liberty guarantee of the 14th Amendment as according all personal conduct or activity that falls within the sphere of individual liberty protection from unjustified state intrusions. But, where the conduct or activity is highly personal, as in the case before us, and is not one of the momentous liberties that underlies our freedom in this country, it is subject to "regulation which is reasonable in relation to its subject and is adopted in the interests of the community. . . ." West Coast Hotel Co. v. Parrish, 300 U.S. 379, 391, 57 S.Ct. 578, 81 L.Ed. 703 (1937), quoted with approval in Gere v. Stanley, supra, at 209.

My interpretation finds support in numerous decisions of the Supreme Court that deal with the concept of liberty under the 14th Amendment. The Court has held, for example, that the concept of liberty encompasses not only the right of a citizen "to be free from mere physical restraint of his person, as by incarceration," but also "to be free in the enjoyment of all his faculties," Allgeyer v. Louisiana, 165 U.S. 578, 589, 17 S.Ct. 427, 431, 41 L.Ed. 832 (1897), and that

---

**3.** In Kent v. Dulles, 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1957), the Supreme Court, in upholding the right to travel abroad as an aspect of liberty protected by the Due Process Clause stated:

Travel abroad, like travel within the country, may be necessary for a livelihood. It may be as close to the heart of the individual as the choice of what he eats, or wears, or reads. Id. at 126, 78 S.Ct. at 1118.

"[n]o right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." Union Pacific Railway Co. v. Botsford, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001, 35 L.Ed. 734 (1891). The case before us involves an exercise of this essential right of the individual to the "control of his own person," a right that may be overborne only by a rationally based exercise of state authority.

In Jacobson v. Massachusetts, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905), the Supreme Court found that the state's compulsory innoculation plan was a justified invasion of the citizen's personal liberty. However, it was careful to point out that generally the citizen was constitutionally entitled to be left alone. Thus it said:

> There is, of course, a sphere within which the individual may assert the supremacy of his own will and rightfully dispute the authority of any human government, especially of any free government existing under a written constitution, to interfere with the exercise of that will. But it is equally true that in every well-ordered society charged with the duty of conserving the safety of its members the rights of the individual in respect of his liberty may at times, under the pressure of great dangers, be subjected to such restraint, to be enforced by reasonable regulations, as the safety of the general public may demand. *Id.* at 29, 25 S.Ct. at 362.

I believe that choice of hair length is within that sphere of personal liberty where the individual has the right, under *Jacobson*, to assert the supremacy of his own will absent a rational basis for state regulation. As a noted judge said as long ago as 1879:

> There is and can be no authority in the state to punish as criminal such practices or fashions as are indifferent in themselves, and the observance of which does not prejudice the community or interfere with the proper liberty of any of its members. No better illustration of one's rightful liberty in this regard can be given than the fashion of wearing the hair. Ho Ah Kow v. Nunan, 12 Fed.Cas. No. 6, 546, pp. 252, 254, n. 2 (Circuit Ct. D.Calif.1879) [quoting from 18 Am.Law Reg. 685 (remarks of Judge Cooley)].

I would reaffirm this court's opinions in *Gere* and *Stull* and hold that plaintiff has stated a claim cognizable under the liberty provision of the Due Process Clause of the Constitution. The plurality, joined by Judge Rosenn, read *Stull* as requiring more than a reasonable showing by the state to justify the regulation of hair length. Although some language therein may be so construed, I read *Stull* as requiring no more than the "reasonable relation" showing of *West Coast Hotel, supra*. In any event, on the basic issue in this case—whether a constitutional claim is asserted in the present context—I believe *Gere* and *Stull* represent the view of a majority of this Court.

Because I have concluded that plaintiff asserted a claim under the 14th Amendment, which would, therefore, require a reversal of the judgment of the district court, I find it unnecessary to take a position on plaintiff's "equal protection" claim or his claim under the 1st Amendment.

I would reverse the judgment of the district court.

VAN DUSEN, ADAMS and GIBBONS, Circuit Judges, join in this dissent.