Charles PICARELLA, Mrs. Elizabeth Picarella, Elizabeth Picarella, a Minor, By Her Parents, Charles and Elizabeth Picarella, Plaintiffs,

v.

Morris M. TERRIZZI, Barbara Y. Lutz, and Susanne Daveler, Individually, and the Southern Columbia Area School District, Defendants.

No. 4:CV–95–0024.

United States District Court, M.D. Pennsylvania.

July 14, 1995.

Don Bailey, Harrisburg, PA, for plaintiffs.

J. Bruce McKissock, Maureen P. Fitzgerald, McKissock & Hoffman, P.C., Philadelphia, PA, Karen S. Coates, Thomas, Thomas & Hafer, Harrisburg, PA, for defendants.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On February 14, 1995, adult plaintiffs Charles Picarella and Elizabeth Picarella, and minor plaintiff Elizabeth Picarella initiated this action with the filing of a complaint pursuant to 42 U.S.C. § 1983. Plaintiffs allege, inter alia, that the investigation of an allegation of child abuse by officials and employees of the Southern Columbia Area School District violated constitutional rights.

Upon review of the complaint, we struck certain language which we found improper. We also specified the constitutional rights alleged by plaintiffs to have been violated, as the complaint was read by the court, for purposes of clarity. An amended complaint, stating the same claims under § 1983 but properly identifying defendant Barbara Lutz as Sandra Lutz, was filed by plaintiffs on March 2, 1995.[1]

Before the court is a motion by defendants to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6). Defendants move to dismiss the amended complaint based on qualified immunity for the individual defendants, and failure to allege a practice, policy or custom by which liability may be imposed upon the School District. We believe, however, that a more fundamental problem exists

with the amended complaint, in that it fails to allege an injury cognizable under the Constitution. The motion to dismiss will be granted for the latter reason.

### DISCUSSION:

#### I. STANDARD OF REVIEW

A motion to dismiss under Fed. R.Civ.P. 12(b)(6) admits the well pleaded allegations of the complaint, but denies their legal sufficiency. Hospital Building Co. v. Trustees of the Rex Hospital, 425 U.S. 738, 740, 96 S.Ct. 1848, 1850, 48 L.Ed.2d 338 (1976). "It is the settled rule that 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Leone v. Aetna Cas. & Sur. Co., 599 F.2d 566, 567 (3d Cir.1979) (quoting Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). The complaint must be read in a light most favorable to the plaintiff with every doubt resolved in the plaintiff's favor. In re Arthur Treacher's Franchisee Litigation, 92 F.R.D. 398, 422 (E.D.Pa.1981).

#### II. STATEMENT OF FACTS

The following are the facts alleged in the amended complaint, which are accepted as true for purposes of the motion to dismiss. Dramatic and/or pejorative language is omitted.

Plaintiff Elizabeth Picarella is a minor who attends school within the Southern Columbia Area School District ("SCASD"). Charles Picarella and Elizabeth Picarella (distinguished herein from the minor plaintiff by reference as "Mrs. Picarella") are her parents. Defendant Morris Terrizzi is a principal within SCASD.[2] Defendants Sandra Y.

---

1. Our Order of February 24, 1995, was ignored in the drafting of the amended complaint, which contains the same improper language which was stricken from the original complaint. Compare, e.g., Order of February 24, 1995, at 2 and 4 ¶ 1 (striking amounts specified as damages in contravention of Local Rule 8.1); Amended Complaint at 2 ¶¶ 4, 8–9 following ¶ 43; 10–11 following ¶ 50 (setting forth same amounts). Since the motion to dismiss will be granted, the striking of

the offending language from the amended complaint is moot.

2. Plaintiffs indicate that Terrizzi is "a principal (or secondary principal) in the Southern Columbia Area School District." Amended Complaint at 2 ¶ 9. The letterhead used by SCASD names Terrizzi as "Secondary Principal" and Roy K. Clippinger as "Elementary Principal." Amended Complaint, Exhibit I at 1. The text of a letter from the superintendent indicates that Terrizzi

Lutz and Susanne Daveler are officials within SCASD. Defendant SCASD is a school district duly organized under the law of Pennsylvania.

On February 23, 1993, Elizabeth Picarella was taken from her classes to a private office by Lutz and Daveler. She was questioned in a suggestive manner about physical abuse at home. Elizabeth Picarella repeatedly denied the allegations, cried, and requested that the questioning cease. She asked for her parents or her brother, Chuckie. Eventually, Elizabeth ran from the office to the ladies room to regain her composure and escape the questioning. Elizabeth was escorted back to the office, where interrogation began again. Fellow students and "others" witnessed these events.

During the interrogation, Lutz and Daveler suggested to Elizabeth Picarella that her father drank too much, and that he beat Mrs. Picarella and Elizabeth Picarella.

On the same day, employees of Children and Youth Services of Northumberland County ("CYS") visited Charles and Mrs. Picarella at their place of business to question them concerning their family. Plaintiffs believe that Terrizzi coordinated and planned the timing of both interviews to justify his personal animosity towards the Picarella family.[3]

On March 9, 1993, two weeks following the interviews of Elizabeth Picarella at school and her parents at their place of business, CYS reported the allegations "unfounded or . . . resolved." Plaintiffs complained to CYS concerning the "resolved" language of the notice, so that, on July 13, 1993, CYS issued a letter stating that the allegations were "unfounded."

In spite of the finding of CYS, Terrizzi maintained a pattern of harassment and intimidation aimed at the Picarella family through the children. Information was gathered on Elizabeth and Chuckie Picarella in violation of school procedures. Plaintiffs were unable to learn what happened during the interview of Elizabeth Picarella or why she was interviewed from Terrizzi, who stated that he was authorized in declining to cooperate by other school officials, including the Superintendent of Schools. This pattern of thwarting plaintiffs' efforts to gain information continues to the present.

Plaintiffs directed a letter dated May 29, 1994, to the School Board President for the purpose of asking specific questions about SCASD's files regarding the Picarella family. Another, more detailed letter was forwarded on August 22, 1994. The latter correspondence related the improper collection of information on the Picarella family and the manipulation of the Picarella children by Terrizzi in an effort to embarrass Charles and Mrs. Picarella.

In response to the letter of August 22, 1994, Terrizzi threatened to sue plaintiffs, contending that their complaints and questions were unlawful.[4] Plaintiffs wrote again to the School Board President demanding appropriate action, to which SCASD responded, also in letter form.

### III. STATING A CLAIM UNDER § 1983

Plaintiffs' complaint is brought pursuant to 42 U.S.C. § 1983, which reads:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdic-

---

"did recommend that the high school staff refer matters involving your children to him." Amended Complaint, Exhibit I at 2. It appears that Terrizzi is the principal of the high school or secondary school in SCASD. It further appears, therefore, that Elizabeth Picarella is a student of high school age.

3. No facts are recited to support this contention, and the complaint states only that plaintiffs "believe and therefore aver" that defendant Terrizzi took this action. Amended Complaint at 4 ¶ 22.

This court is not aware of any supervisory authority on the part of a school principal over personnel of CYS. Therefore, this particular fact is recited in the form of plaintiffs' belief.

4. This recitation is plaintiffs' characterization of Terrizzi's letter. The letter actually refers to plaintiffs' letter of August 22, 1994, as "character assassination in its purest form," and threatens a defamation suit. Amended Complaint, Exhibit G.

tion thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution or laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Sec. 1983.

■ In order to state a claim under § 1983, plaintiff must allege a violation of rights secured by the Constitution and laws of the United States, and that the deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988). School districts and school officials are "persons" within the meaning of § 1983. *Ingraham v. Wright,* 525 F.2d 909 (5th Cir.1976), *aff'd,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977); *Kelly v. Richland School District,* 463 F.Supp. 216 (D.S.C. 1978).

Defendants do not argue that they are not state actors for purposes of § 1983. Rather, they argue that they cannot be held liable, the individual defendants because of qualified immunity and the school district because no policy, practice or custom is alleged sufficiently. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* —— U.S. ——, ——, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517, 523 (1993) (municipality not liable under § 1983 unless a municipal policy or custom caused constitutional injury, but freedom from liability does not equate to immunity from suit). Before reaching the question of whether these defendants may be held liable, we turn to the question of whether there has been a deprivation of a federally protected right, privilege or immunity.

## IV. CONSTITUTIONAL RIGHTS OF SCHOOL STUDENTS

The Supreme Court has ruled on a number of occasions that a state or local government may not unreasonably restrict certain fundamental, clearly enumerated, constitutional rights. *See, e.g., Hazelwood School District v. Kuhlmeier,* 484 U.S. 260, 266, 108 S.Ct.

562, 567, 98 L.Ed.2d 592 (1988) ("Students in public schools do not 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.' "; quoting *Tinker v. Des Moines Community School District,* 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969)); *New Jersey v. T.L.O.,* 469 U.S. 325, 333, 105 S.Ct. 733, 738, 83 L.Ed.2d 720 (1985) (Fourth Amendment prohibition against unreasonable searches and seizures applies to searches conducted by school officials); *Goss v. Lopez,* 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975) (procedural component of Due Process Clause applies to suspension from school).

■ In reviewing an alleged constitutional deprivation in the public school context, however, it should be noted that students, as unemancipated minors, do not possess all of the rights of an adult, nor do they possess such rights to the same extent as an adult, when such rights do apply. *See Vernonia School District 47J v. Acton,* —— U.S. ——, ——, 115 S.Ct. 2386, 2392, 132 L.Ed.2d 564 (1995) (students' rights under Fourth Amendment affected by "schools' custodial and tutelary responsibility for children").

## V. FEDERAL COURT REVIEW

■ In addition to the diminution of rights and interests on the part of students to which the Supreme Court referred in *Vernonia,* the Third Circuit has explained that the rights for which a student may recover under § 1983 should be those that are clearly set forth in the Constitution or at least well-recognized. That is, § 1983 is not intended to be a vehicle for interference by federal courts in the operation of public schools, a traditional area of state and local concern. *Zeller v. Donegal School District Board of Education,* 517 F.2d 600 (3d Cir.1975). *See also Moreland v. Western Pennsylvania Interscholastic Athletic League,* 572 F.2d 121 (3d Cir.1978) (league rules for high school athletics rationally related to legitimate governmental interest and therefore "free from constitutional defect").

In *Zeller,* the plaintiff was a high school soccer player who violated an athletic code regulating hair length. He filed a complaint

for damages under § 1983. 517 F.2d at 601. The Third Circuit reviewed the history of § 1983, including the expansion of relief available following *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). 517 F.2d at 603–604. The Court then reviewed the meaning of a constitutionally protected right, particularly in the area of the "penumbra" of specific guarantees. 517 F.2d at 605 (quoting *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965)). It concluded that hair length was not of such fundamental importance to justify overturning the value judgment of a school district; that is, hair length "does not rise to the dignity of a protectable constitutional right." 517 F.2d at 605–606.

■ In placing this decision into context, the Third Circuit pointed out that there are some areas in which a school district's regulations will come into conflict with a student's individual rights, but that, due to the importance of the school district's functions, the individual's rights are overridden.

> The faculty must prescribe curriculum; the administration must assign faculty, promulgate rules for the conducting of courses and extracurricular activities, and set standards for grading, promoting and graduating. As the Supreme Court said recently in reversing the Eighth Circuit's finding of a substantive due process violation in a related school rights context:

>> It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion. Public high school students do have substantive and procedural rights while at school. *See Tinker v. Des Moines Independent Community School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943); *Goss v. Lopez, supra*. But § 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations. The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members, and § 1983 *was not intended to be a vehicle for federal court correction of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees. See Epperson v. Arkansas*, 393 U.S. 97, 104, 89 S.Ct. 266 [270], 21 L.Ed.2d 228 (1968); *Tinker, supra*, 393 U.S. at 507, 89 S.Ct. 733.

> *Wood v. Strickland*, 420 U.S. 308, 326, 95 S.Ct. 992, 1003, 43 L.Ed.2d 214 (1975) (emphasis added).

*Zeller*, 517 F.2d at 606 (footnote omitted). The Third Circuit summarized its holding by restating the principle that "there are areas of state school regulation in which the federal courts should not intrude." 517 F.2d at 607. While there is no "bright-line" rule, the court in which § 1983 is invoked must review the asserted right in the context of the functions of the public school and the purpose of the district's decision, and determine whether there is a "general" and "transcending" reason to overturn that determination. *Id.* The purpose of this rule is to prevent trivialization of the Constitution: over-expanding the notion of fundamental liberties protected by the Constitution compromises the value of and threatens the protection accorded those liberties. *Id.*

We recognize, of course, that *Zeller* is a plurality decision. In his concurrence, Judge Rosenn agreed with the majority that hair length is not a fundamental right, but falls with the sphere of personal liberty protected by the Due Process Clause. 517 F.2d at 609–610. He concluded that regulation of hair length is subject to federal court review, but only for the purpose of determining whether there is a rational basis for hair regulation which promotes valid educational goals. 517 F.2d at 610–611.

## VI. PLAINTIFFS' CLAIMS

Having reviewed the facts alleged in the complaint and some of the law governing claims under § 1983 as they relate to the administration of public schools, we think it necessary to establish more precisely what claims plaintiffs are asserting. *Cf. Kost v.*

*Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993) (district court reviewing motion under Rule 12(b)(6) must accept as true all factual allegations, but not required to accept legal conclusions to be drawn therefrom); *Reeve v. Union Pacific R. Co.*, 790 F.Supp. 1074, 1076 (D.Kan.1992) (well-pleaded facts, as opposed to conclusory allegations, accepted as true; quoting *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984)). In our earlier order, we attempted to ascertain the constitutional authorities for plaintiffs' claims. *See* Order of Court dated February 24, 1995, at 3.

Plaintiffs first recite facts related to the interrogation of Elizabeth Picarella and her parents by school administrators and CYS, respectively, concerning allegations of abuse. Amended Complaint at 3–4 ¶¶ 13–22. They then point out that CYS, following an investigation, determined that the allegations were unfounded. Amended Complaint at 4–5 ¶¶ 23–24.

Following the interrogation, plaintiffs attempted to gain access to information regarding the allegations from school officials. Amended Complaint at 5–7 ¶¶ 27–33. In response to some of these efforts, Terrizzi threatened to sue the Picarella family. Amended Complaint at 6 ¶ 31.

Plaintiffs also allege that information was gathered from the Picarella children in violation of school procedures. Amended Complaint at 5 ¶ 26. In Count I, plaintiffs raise further factual allegations. Specifically, they allege that, due to the harassment (which included Terrizzi's personal handling of matters concerning the Picarella children), Chuckie Picarella left SCASD and now attends the Valley Forge Military Academy. Amended Complaint at 8 ¶¶ 38–40. The actions leading to this decision included selective discipline for Chuckie Picarella. Amended Complaint at 8 ¶ 39 and Exhibit F. Further, they allege that Elizabeth Picarella has been intimidated into incomplete participation at school. Amended Complaint at 8 ¶¶ 41–43.

Bereft of its pejorative, conclusory language then, the amended complaint states that: (1) Elizabeth Picarella was questioned by school officials about abuse; (2) school officials will not say why Elizabeth Picarella was questioned about abuse; (3) school officials will not release records of why Elizabeth Picarella was questioned about abuse; and (4) Chuckie Picarella was disciplined by school officials.

Although the amended complaint speaks of a pattern of harassment, no further acts constituting a "pattern" are set forth. Moreover, although the amended complaint speaks of "secret records" maintained by school officials, the only records described are those relating to the allegations of child abuse. Records relating to Chuckie Picarella, although plaintiffs did not like the "distorted picture" they painted, in fact were shown to Mrs. Picarella. Amended Complaint, Exhibit F at 1.

## VII. APPLICATION OF LAW TO CLAIMS ASSERTED

### A. Fourth Amendment

Plaintiffs first argue that the questioning of Elizabeth Picarella violated her right to be free from unreasonable searches and seizures. Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss at 9. Specifically, plaintiffs argue that: (1) investigating complaints of child abuse is not a discretionary function of any of the defendants, as they are not authorized by statute to do so; (2) Elizabeth Picarella had the right to be free of physical restraint and interrogation. The arguments proffered by plaintiffs appear to be tantamount to a contention that the taking aside and questioning of a student by public school employees in itself constitutes a violation of the Fourth Amendment, that is, it is a *per se* constitutional deprivation.

The strength of the parties' arguments depends in part upon a review of the Child Protective Services Law, P.L. 1240, No. 206, § 2, codified at 23 Pa.Cons.Stat.Ann. § 6301 et seq. (1990).[5] Under that statutory scheme, enumerated persons are required to

---

5. The Child Protective Services Law recently underwent considerable amendment by the Pennsylvania legislature. *See* P.L. 1292, No. 151, §§ 1 et seq. (1994) (effective July 1, 1995). Obviously, the older version is applicable in this case.

report possible child abuse "when they have reason to believe, on the basis of their medical, professional or other training and experience" that a particular child with whom they have contact is an abused child. 23 Pa.Cons.Stat.Ann. § 6311(a). School teachers and administrators are enumerated persons. 23 Pa.Cons.Stat.Ann. § 6311(b). A person who fails to make a required report is subject to criminal liability. 23 Pa.Cons.Stat.Ann. § 6319.

■ In other words, particular persons who come into contact with children must make a reasoned decision based upon their own background as to whether there is "reason to believe" that a child is the victim of abuse. Failure to do so exposes these persons to criminal prosecution.

■ To say that, under these circumstances, a school employee who is suspicious but unsure of whether there is "reason to believe" that abuse has occurred may not ask questions of the possible victim would be absurd in three ways: (1) from the point of view of the employee, they would be subject to criminal liability for not making a determination on an issue into which they could not inquire; (2) from a victim's perspective, a child who, presumably, would be afraid to approach an adult may not be approached by an adult; and (3) from the legislature's perspective, the purpose of the statutory scheme is defeated because no abuse is prevented. While school teachers and administrators may not make a determination as to whether the report of sexual abuse is "founded" or "unfounded," they certainly make the initial determination as to whether there is "reason to believe" that there has been abuse.

The problem with plaintiffs' argument is that it confuses the questioning by the school

teachers or administrator with the full-blown investigation by the child protective service.[6] Since the initial determination is being made based upon the "medical, professional or other training and experience" of the enumerated person, it is certainly reasonable for such a person to employ his or her background (as by gathering information through questions) to make the determination. It certainly would be inconsistent with the statutory scheme, as well as any reasonable person's notion of common sense, for this court to hold that a school teacher may not question a child concerning suspected child abuse, especially in light of the teacher's potential criminal liability.

■ We hold, then, that a person enumerated in § 6311(b) is required to make a discretionary judgment, cf. Good v. Dauphin County Social Services, 891 F.2d 1087, 1091 (3d Cir.1989) (state law enforcement official making a judgment in connection with searches and seizures is exercising a discretionary function),[7] and that asking questions in the context of exercising such judgment is entirely reasonable. See also Vernonia School District 47J, ⸺ U.S. at ⸺, 115 S.Ct. at 2391–92 (public schools exercise high degree of supervision and control over students).

■ Of course, the conduct of Terrizzi about which plaintiffs complain is not limited to the questioning of Elizabeth Picarella. Plaintiffs aver based on their own belief that Terrizzi coordinated and planned the timing of the interrogation of Elizabeth with the visit by CYS employees to Charles and Mrs. Picarella's place of business. We see no constitutional violation by any such conduct, presuming that it occurred.[8] CYS certainly

---

6. "Child protective service" is defined at 23 Pa.Cons.Stat.Ann. § 6303, and includes a county CYS.

7. Plaintiffs argue that the failure to provide immunity for unauthorized child abuse investigations in § 6318 shows that enumerated persons are not authorized to perform such investigations. Nothing in § 6318 detracts from an enumerated person's authority to exercise judgment in making a report, however. In fact, since § 6318 provides immunity under state law for persons who participate in good faith in the

making of a report, this section supports our determination that enumerated persons exercise a discretionary function in participating in the making of a report.

8. As noted above, plaintiffs indicate no personal knowledge that Terrizzi actually planned the timing of the interviews, and it is not clear how a high school principal would have authority over CYS in doing so. However, resolving all doubts in favor of plaintiffs, we presume the allegation to be true for the purposes of the motion to

violated no constitutional right in questioning the Picarella parents, and the timing of the interview is of no consequence.

■ Having determined that questioning of a student concerning potential child abuse by school administrators is not a *per se* violation of the Fourth Amendment, we turn to an analysis of whether such questioning violates the Fourth Amendment as unreasonable. In *Vernonia School District 47J*, the Supreme Court reviewed state action under the Fourth Amendment by comparing (1) the scope of the legitimate expectation of privacy at issue, —— U.S. at ——, 115 S.Ct. at 2391, (2) the character of the intrusion complained of, —— U.S. at ——, 115 S.Ct. at 2392–93, 1995 WL 373274 at *7, and (3) the nature and immediacy of the governmental concern at issue, and the efficacy of this means for meeting it, —— U.S. at ——, 115 S.Ct. at 2394–95.

■ As discussed at length above, a public school student has a reasonable expectation of privacy which is decreased due to the responsibility of the school as custodian and educator. A child certainly retains this privacy interest despite indications or allegations of abuse. However, the expectation is by no means absolute.

The character of the intrusion complained of in this case is questioning by school administrators. The questioning was done in a room separated from other students. While plaintiffs allege that students and "others" witnessed some of the events, this occurred when Elizabeth Picarella left the place where she was questioned, and was not due to any conduct on the part of the school employees.

As to the nature and efficacy of the intrusion, there is no question of the state's interest in preventing and/or punishing child abuse. *See, e.g., Landstrom v. Illinois Dept. of Children and Family Services*, 892 F.2d 670, 677 (7th Cir.1990) (interest of state in investigating child abuse is "extraordinarily weighty"; quoting *Darryl H. v. Coler*, 801 F.2d 893, 902 (7th Cir.1986)). *Cf. Wyman v. James*, 400 U.S. 309, 318, 91 S.Ct. 381, 386, 27 L.Ed.2d 408 (1971) (public interest in the welfare of children: "There is no more worthy object of the public's concern."). *See also* 23 Pa.Cons.Stat.Ann. § 6302(a) (finding that "[a]bused children are in urgent need of an effective child protective service to prevent them from suffering further injury and impairment"); *In Interest of J.R.W.*, 428 Pa.Super. 597, 631 A.2d 1019, 1021–1022 (purpose of Act is to bring about quick and effective reporting of suspected child abuse, so that protective services may be provided, and focus of the Act is on protecting the child). Apparently due to a report or other indication of potential abuse,[9] Elizabeth Picarella was questioned by school personnel. The state's interest and the questioning must be balanced against Elizabeth Picarella's Fourth Amendment rights.

The amended complaint adds that Elizabeth Picarella was reduced to tears by the questioning, that the questioning did not stop when she asked, and she was not permitted to see her brother when she asked. We do not see how these circumstances make the questioning unreasonable, in light of the state interest in uncovering child abuse. In fact, these reactions do not seem out of the ordinary: one of the reasons that persons enumerated in the Child Protective Services Law must remain aware of potential abuse is that an abused child would not be expected to report abuse by a family member.

■ We conclude that the interest of the state outweighs the interest of Elizabeth Pi-

---

dismiss. This resolution does not alter the conclusion we reach.

9. As noted, plaintiffs' argument focusses on the lack of authority on the part of public school administrators to question Elizabeth Picarella at all, a contention we reject. A different question would be presented if there were no reason for the questioning which took place. Plaintiffs do not raise this issue in their brief in opposition to the motion to dismiss. It should be noted that such a contention would be untenable factually, since plaintiffs have not properly requested, from CYS, information concerning the events which prompted the questioning, as will be discussed later in this memorandum. As noted in Fed. R.Civ.P. 11(b)(3), plaintiffs have a responsibility to make a reasonable inquiry prior to making factual representations. It would not be reasonable to make factual representations on information and belief when evidence is easily available, and has not been sought.

carella under the circumstances presented. The school administrators were entrusted with the "custodial and tutelary responsibility" for Elizabeth Picarella. In addition, Pennsylvania law imposes an extra duty of care on school administrators, that of reporting suspected child abuse when there is "reason to believe" that such abuse is occurring or has occurred. The Fourth Amendment is not violated when school administrators question a student in order to determine whether there is "reason to believe" that a child is abused.[10] We simply see no injury of constitutional dimension in the fact that Elizabeth Picarella was upset by the questioning which took place.

### B. Interference in Family Inter-Relationships

 Plaintiffs contend that the conduct of the school administrators constitutes undue state interference in their family inter-relationships. The Supreme Court has recognized that parents and other care-takers have a fundamental interest in ensuring that their familial relationships are not subject to unwarranted intrusion. *See Darryl H.*, 801 F.2d at 901 (collecting cases). However, as with an individual's rights under the Fourth Amendment, this interest also is not absolute. *Id.* at 902 (right against interference in familial relationships balanced against state interests).

 With respect to the questioning of Elizabeth Picarella, the discussion above concerning the Fourth Amendment applies with equal force to this contention. *Cf. Darryl H.*, 801 F.2d at 901–902 n. 7 (same basic analysis of weighing interests applies to Fourth Amendment and due process claims). The administrators questioned Elizabeth Picarella about suspected child abuse in order to determine whether she was an abused child. This intrusion is outweighed by the state's

interest in providing protection from abuse to children, and the intrusion was not unreasonable, or "unwarranted," in any manner under the circumstances.

With respect to this claim, plaintiffs also point to the disciplinary measures taken against Chuckie Picarella. According to plaintiffs, Terrizzi's actions toward Chuckie Picarella made him want to leave SCASD to attend Valley Forge Military Academy. It should be noted that Chuckie Picarella is not a party to this action, so that this conduct may be considered only in the manner in which it affects Elizabeth Picarella and her parents.

 Pennsylvania law, in the form of the Local Agency Law, provides for appeals of disciplinary actions taken against public school students. 2 Pa.Cons.Stat.Ann. §§ 551–555, 751–754. *See, e.g., Kish v. Annville–Cleona School District*, 165 Pa.Cmwlth. 336, 645 A.2d 361 (1994) (appeal of disciplinary action taken against student after hearing by school district board and Court of Common Pleas). Again, absent extraordinary circumstances, it is not the place of a federal court to sit in review of actions taken by local school district administrators which relate to the ordinary, internal operation of a public school.

 In order to establish a claim under § 1983, plaintiffs must show that the disciplinary action taken against Chuckie Picarella was wrongful. Obviously, defendants cannot be held liable for properly imposed discipline. However, neither Chuckie Picarella nor his parents have taken the proper steps to challenge the disciplinary action.[11] A challenge in this court to the propriety of the discipline imposed amounts to an improper collateral appeal of the action taken by school officials. Restating the challenge as undue interference in family relationships does not

---

10. To this it might be added that, consistent with *Zeller*, absent more egregious circumstances than those presented in this case, it is not the place of a federal court to second-guess the method used by school administrators in questioning a student. Absent a clear reason for doing so, a federal district court should not place itself in the position of sitting in review of decisions made by education professionals.

11. A letter from Charles and Mrs. Picarella, appended to the amended complaint as Exhibit F, indicates that the Picarellas refused to participate in a hearing because they did not feel that they had been given adequate notice. There is no indication that the adequacy of the notice was challenged in the manner provided in the Local Agency Law.

alter its fundamental nature as a challenge to the propriety of the discipline imposed.

■ We see no constitutional injury arising from an unchallenged disciplinary action taken in the usual course of the operation of a public school, particularly to parties who are not even the subject of the discipline. Plaintiffs claim that they have been deprived of the daily society and companionship of Chuckie Picarella, and that this deprivation is due to the actions of Terrizzi. Actually, the loss of the daily society and companionship of Chuckie Picarella is due to the decision to send him to Valley Forge Military Academy. Since any disciplinary action taken by Terrizzi is subject to review under the Local Agency Law, of which plaintiffs did not take advantage, the disciplinary action itself cannot have been the cause.

Stated another way, the right asserted by plaintiffs is the right to be free from unwarranted interference in familial relationships. The imposition of discipline on students is an ordinary function of a school administrator. That the discipline leads to less time spent with the family does not implicate a constitutional right; if so, a teacher who assigns a large amount of homework theoretically violates a constitutional right. We see no injury of constitutional magnitude in the disciplining of Chuckie Picarella, so long as procedural due process was afforded. The Commonwealth of Pennsylvania provides a means for challenging disciplinary actions, and we see no reason that a federal court should assume responsibility for overseeing discipline imposed on individual students.

■ Plaintiffs also complain that Terrizzi instructed the teachers to refer all problems with the Picarella children to him. We know of no constitutional right to have a particular teacher or administrator handle problems a student may have, nor do plaintiffs cite a source for such a right. Plaintiffs appear to be making some sort of equal protection argument: their problems were handled differently than other students' problems. No form of invidious discrimination based on race, religion, gender, etc., is alleged.

The amended complaint itself provides the reason for any disparate treatment: the teachers in SCASD did not want to have contact with Charles and Mrs. Picarella, and so communication was handled by the principal, Terrizzi. Amended Complaint, Exhibit I at 2. As stated a number of times, this action appears to be well within the reasonable bounds of discretion which school administrators must exercise to perform their function, and we see no reason for a federal court to substitute its judgment for the judgment of a professional educator. We see no constitutional injury in a principal shielding faculty members from parents who are perceived as troublesome.

In sum, the amended complaint does not state a constitutionally cognizable claim of unwarranted interference in inter-familial relationships.

## C. Access to Information

Plaintiffs claim that Terrizzi, with the complicity of higher-level school district officials, refused to provide information to the Picarellas in the form of: (1) records related to the investigation into suspected child abuse; and (2) "secret" records maintained by Terrizzi.

As to the failure to provide to plaintiff information about the questioning of Elizabeth Picarella, plaintiffs cite no constitutional authority which requires any named defendant to do so. In fact, plaintiffs were advised in September of 1993 that requests for information related to a report of suspected child abuse properly is directed to CYS, and that information otherwise is confidential. Amended Complaint, Exhibit D at 1 (citing 23 Pa.Cons.Stat.Ann. §§ 6339, 6340(b)). Apparently, plaintiffs chose to ignore this notice as well as the law, and continued to seek the information through the wrong governmental entity. Amended Complaint, Exhibit E. We see no constitutional violation in requiring plaintiffs to seek information through the proper agency, as required by statute.

■ As to the allegation that secret records were maintained, the only records referred to appear to be the CYS records and the information on Chuckie Picarella which was collected and allegedly distorted. As discussed, no constitutional deprivation occurs when a governmental entity refuses to

provide records which the law makes available through another governmental entity, especially when the persons requesting the information are directed specifically as to how to obtain the records.

With respect to the records prepared with regard to Chuckie Picarella, the amended complaint demonstrates that these records were shown to Mrs. Picarella. Amended Complaint, Exhibit F at 1. Again, there is no constitutional deprivation.

### D. Due Process

Finally, plaintiffs claim that defendants have violated their rights under the Constitution "by refusing to grant simple requests for information and in refusing to even respond to timely and proper requests for information." Complaint at 10 ¶ 49. As discussed at length above, the requests were not proper: they were directed to the wrong entity.

### VIII. CONCLUSION

Viewed in its entirety, the amended complaint is bereft of any conduct on the part of defendants which amounts to a claim cognizable under the Constitution, and is bereft of any allegation of injury cognizable under the Constitution. The case is the epitome of "making a federal case" out of a purely local concern. School administrators played a role in the investigation of suspected child abuse in the Picarella family, and, thankfully, none was found. Chuckie Picarella had disciplinary problems at school, which school officials handled. The Picarellas sought information from the school district, which should have been sought from CYS, and the school district told them so. Teachers in SCASD were apprehensive about contact with the Picarellas, so the school principal handled the contact himself.

In all of this, we see no matters implicating fundamental rights, at least not in the sense that plaintiffs were deprived of a constitutionally protected right. Their children were not barred from SCASD facilities or activities, with the exception of a suspension for Chuckie Picarella which was not challenged properly and so must be considered appropriate. Any purported intrusion into the family life of the Picarellas was justified in nature and extent. No information was improperly withheld; any withholding was due to plaintiffs' not asking the proper people.

This is not an instance of racial segregation, gender discrimination, or any of the matters in which a federal court is justified in intervening. This is a simple matter of parents who do not get along well with the principal and teachers at their children's school, and feel wronged by actions taken by school administrators. None of the actions, however, amounts to a constitutional tort, and it is not the role of a federal court to redress every perceived wrong.

An appropriate order shall issue.

### ORDER

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. Defendants' motion (record document no. 12) to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) is granted.

2. The amended complaint (record document no. 3) is dismissed for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).

3. The clerk is directed to close the file.